Remmey *v.* Gedney.

## New York Marine Court.

*Special Term—June* 19, 1876.

WILLIAM M. REMMEY *against* FREDERICK G. GEDNEY.

THOMAS KILPATRICK *against* FREDERICK G. GEDNEY.

The salary of a judicial or other public officer, while in the hands of the disbursing officer of the general or municipal government in his official capacity, in common with other money to be applied by him towards the payment of judicial and other official salaries according to law, can neither be arrested, attached, seized, nor taken under attachments, judgments, executions, or supplementary proceedings founded thereon or taken in aid thereof.

The ground of exception stated.

Motion for an order under section 294 of the Code, directing the comptroller to pay certain moneys in his hands, on account of certain judgments against the defendant.

McADAM, J.—The district court in the city of New York is, by section 9 of the Code, designated as one of the several courts of the State of New York, and therefore forms part of the judicial system of the State (Quinn *v.* Mayor, &c., 44 *How. Pr.* 266; affirmed 53 *N. Y.* 627), and the salary of the justices of said court, upon principles of public policy, can neither be attached, reached nor taken, either upon mesne or final process, nor under supplementary proceedings founded thereon or taken in aid thereof, if the person in whose hands the fund is attempted to be attached or taken holds the money in his official capacity as county treasurer or comptroller, in common with other money, to be applied by him towards the payment of judicial or other official salaries according to law. In other words, the

public moneys specifically appropriated to the payment of judicial and other official salaries cannot be diverted from their legitimate object while in the hands of the disbursing officer of the public. The supreme court of the United States declared against such diversion of the public moneys in the case of certain seamen of the frigate Constitution (See Buchanan v. Alexander, 4 *How. U. S.* 20). That learned court, in delivering its opinion, said "That if such appropriations may be diverted and defeated by State process or otherwise, the functions of the government may be suspended; that so long as money remains in the hands of the disbursing officer it is as much the money of the United States as if it had not been drawn from the treasury; that until paid over by the agent of the government to the person entitled to it, the fund cannot in any legal sense be considered a part of his effects, and that the purser (who was in that case the disbursing officer) was not the debtor of the seamen." The court, in deciding further, observed: "A purser, it would seem, cannot in this respect be distinguished from any other disbursing agent of the government. If the creditors of these seamen may, by process of attachment, divert the public money from its legitimate and appropriate object, the same thing may be done as regards the pay of our officers and men of the army and of the navy, and also in every other case where the public funds may be placed in the hands of an agent for distribution. To state such a principle is to refute it. No government can sanction it. At all times it would be found embarrassing, and under some circumstances it might be fatal to the public service."

The same principle was applied to the case of a school-teacher by the Kentucky court of appeals (See Tracy v. Hornbuckle, 8 *Bush*, 336 ; 12 *Albany L. J.* 391; and see opinion of McAdam, J., in Dubernet v. Clyde, filed May 16, 1876). If the plaintiff is allowed

to take the salary appropriated by law to the defendant's support for the month claimed herein, he or any other judgment creditor may, with equal propriety, appropriate the same from month to month during the defendant's entire official term, until all of their judgments, with costs, have been fully satisfied. It is almost needless to say that such a diversion of the public moneys by judgment creditors might seriously embarrass the disbursing officers of the government, and might, at the same time, interfere with the proper administration of its judicial system by preventing the money specifically devoted by the public to the support and maintenance of its chosen officer, in a manner becoming the dignity of the office, from ever reaching the object contemplated. If this result can be successfully accomplished in this case, it can be done in every case in which a judicial officer who, either prior to his election or while in office, has been overtaken by financial misfortune and has judgment creditors clamoring for their demands. It is but fair to assume that judicial officers will pay their just obligations, if able, and that they, like other honest men overtaken by financial embarrassments, are unable to do so without the necessary means, and there is no legal reason why their creditors should either embarrass the government authorities by proceedings tending to divert the public moneys or humiliate the judicial officer by seeking to appropriate that which, by law, was designed for his proper support and maintenance. After the salary reaches the judicial officer, he is, like any other private citizen, liable to all the actions and proceedings contemplated by law, and is amenable to all the civil remedies provided for the collection of debts or the enforcement of just liabilities; but while the salary of the judicial officer is in the hands of the disbursing officer of the government, in his official capacity, in common with other money to be applied by him

Remmey v. Gedney.

towards the payment of judicial and other official sala-
ries, according to law, the judgment creditor of the
officer, either by supplementary proceedings or other-
wise, cannot prevent such disbursing officer from
properly discharging his trust by paying the salary to
the officer for whom it was by law designed, much less
can such creditor be allowed to divert the public
moneys from the uses and purposes to and for which
they were specifically appropriated, by orders or pro-
ceedings tending to appropriate the same to himself,
in payment of judgments or otherwise. This is upon
the pervading principle in all governments, that where
private and public interests come in conflict, with
proper exceptions the former must yield. The court
of appeals, in Bliss v. Lawrence (58 N. Y. 445, 451),
use the following language in stating the same general
principle: " The public service is protected by protect-
ing those engaged in performing public duties; and
this, not upon the ground of their private interest, but
upon that of the necessity of securing the efficiency of
the public service by seeing to it that the funds pro-
vided for its maintenance should be received by those
who are to perform the work, at such periods as the
law has appointed for their payment. To this extent,
we think, the public policy of every country must go
to secure the end in view." The order in the present
case was issued againt Andrew H. Green, Esq., as
comptroller of the city and county of New York,
under section 294 of the code, and was designed to
reach the defendant's salary. Mr. Green, either indi-
vidually or officially as comptroller, was in no legal
sense the debtor of the defendant; he was not the
defendant's employer; he owed him no salary, nor
had he any funds in his hands belonging to the de-
fendant. The moneys appropriated to the payment of
judicial salaries belong to the public until actually
paid over to the defendant, when they will become for

the first time identified as his property. The possession by the comptroller of the warrant in the defendant's favor does not alter this conclusion ; because the mere drawing of the check does not amount even to an equitable assigment of the fund until the warrant is actually delivered : so that the application for an order directing the comptroller to pay over the moneys claimed to have been discovered upon the defendant's examination is without warrant in law, and cannot be granted.

The supreme court of Tennessee, in Bank of Tennessee v. Dibrell (3 Sneed, 379), held that "The relation of debtor and creditor, in the sense of the attachment and garnishee laws, does not exist between the State and its employees ; the funds set apart for that purpose belong to the State and not to him who renders such service, until they pass out of the treasury and the hands of disbursing agents. We held, at the last term of this court, that the pay of a pensioner could not be attached in the hands of a pension agent, nor in its transmission to him by a private person, acting under a power of attorney from him, and this upon the ground that the fund did not lose the protection of this principle until it reached the hands of the pensioner."

The principles adverted to are generally applicable to all persons holding in any legal capacity the funds of another's debtor. Clerks of courts and sheriffs (7 Humph. 132) ; pursers in the navy, as to the pay of seamen (4 How. U. S. 20, supra ; 2 Cranch C. Ct. 344) ; municipal corporations, as to the salaries of their officers (11 Mo. 59 ; 6 Vt. 121 ; 12 Conn. 404), have been held to be included in this exemption from garnishment.

The supreme court of Pennsylvania, in Bulkley v. Eckert (3 Penn. St. 368), decided that money held by a person in his official capacity as treasurer of the board of school directors—in common with other

money to be applied towards the payment of teachers, according to the rules and regulations of the acts of assembly for the maintenance of public schools, and not as private debts due from him to the defendant—could not be attached under their laws.

In delivering the opinion of the court, SERGEANT, J., said : "The person in whose hands this claim was attached held the money in his official capacity as treasurer of the board of school directors, in common with other money to be applied towards the payment of teachers, according to the rules and regulations of the acts of assembly for the maintenance of public schools, and not as a private debt due from him to the defendant. His situation does not appear to us to be distinguished from that of a sheriff or a prothonotary who has money in his hands as a public officer ; and it has been determined that those are not liable to the process of attachment. Great public inconvenience would ensue, if money could be thus arrested in the hands of officers, and they be made liable to all the delay, embarrassment and trouble that would ensue from being stopped in the routine of their business, compelled to appear in court, employ counsel and answer interrogatories, as well as take care that the proceedings are regularly carried on and bail to return duly given. If a precedent of this kind were set, there seems to be no reason why the State or county treasurers, or other fiscal officers of the commonwealth or of municipal bodies, may not be subjected to the levying of attachments, which has never been attempted nor supposed to come within the attachment law. We do not, therefore, think this is such a debt as is contemplated by law." To the same effect see, also, Chealy v. Brewer (7 *Mass.* 259) ; Devine v. Harvie (7 *Monroe*, 439) ; Spaulding v. Imly (1 *Root*, 551).

In deciding the legal question presented by this application, due regard must be had to the distinction

between ordinary contract debts and liabilities of a municipal corporation incurred in the government of its municipality (and which are, as a rule, enforceable against it in like manner as if it were a private corporation managing its legitimate business), and cases where the municipal corporation is acting merely in a representative capacity as trustee for the public in disbursing its moneys raised by tax levies for certain specified objects ; in which last mentioned case the money, in a legal sense, does not become the property of the municipal corporation, any more than if it were an incorporated trust company, and, as such, had been entrusted with the administration of the trust. Chief Justice NELSON, for example, in Bailey *v.* Mayor, &c., of New York (3 *Hill*, 531), notices this distinction between the private rights, liabilities and duties of municipal corporations, and the powers and duties conferred and exercised for the public benefit. For the one, they are held responsible as individuals or private corporations ; in the discharge of the other, they are to be considered as having received the grant in a public or municipal character.

In Lowber *v.* Mayor, &c. of New York (7 *Abb. Pr.* 252), the plaintiff, having obtained judgment against the defendants in the New York supreme court, issued execution and subsequently obtained an order under section 294 of the Code, for the examination of Mr. Andrew V. Stout, the then chamberlain of the city. Upon the conclusion of the examination, a motion was made for an order directing Mr. Stout to pay to the sheriff the amount of the judgment in satisfaction thereof. Judge INGRAHAM, in an opinion written by him denying the plaintiff's motion, after referring to the above distinction, said : "The same distinction must exist as to its liability and as to the property in charge of its officers. The private property of the corporation is undoubtedly liable for its debts, and such liability

may be enforced in the ordinary mode of collecting debts; but the question is a very different one when it is inquired if the property belonging to the public, and held by the municipal authorities for public purposes, can be applied to the payment of such liabilities. The examination of the chamberlain shows that the moneys in his hands are the proceeds of bonds issued in anticipation of taxes, in part, and also of moneys collected for the taxes of the year, and that he has no other property in his possession belonging to the city. I have no hesitation in the conclusion that money collected by tax is not the property of the defendants, and does not come within the terms used in this section. The tax law gives authority to raise by tax a specific amount, not for their purposes as a corporation, but to be applied to the necessary expenses in the government of this city, and which moneys the legislature would have been compelled to raise if they had not delegated that power to another body. In no sense is the money so to be raised made the property of the defendants. It still remains the property of the people, to be applied to the specific objects for which it is appropriated, and guarded by the strictest provisions of law, even as far as to inflict punishment for any appropriation of those funds to the objects of the corporation different from those which the legislature have designated."

For these various reasons the plaintiff's application will be denied, but without costs, and the injunction upon the comptroller will be dissolved.

Ordered accordingly.

In the suit of Conrell against Funk, Judge J. F. DALY, in common pleas, special term, has decided, on proceedings supplementary to execution, that money in the hands of a public disbursing officer, though due to a defendant as salary, cannot be reached in such a proceeding. P. C. Talman, appeared for the plaintiff. C. F. Maclean, for the board of police. N. Y. Tribune, Oct. 4, 1878.