PARDON C. RICKEY, as Receiver of the FIRST NATIONAL BANK OF MECHANICVILLE, N. Y., Plaintiff, *v.* GEORGE O. SLINGERLAND, Defendant.

Supreme Court, Saratoga County, May 3, 1932.

*William T. Moore,* for the plaintiff.

*Robert W. Fisher,* for the defendant.

HEFFERNAN, J. Defendant is the county treasurer of the county of Saratoga and as such receives an annual salary of $3,000. He was a stockholder in the First National Bank of Mechanicville, N. Y., the par value of the stock held by him being $1,000. This

bank has been closed as insolvent by direction of the Comptroller of the Currency. Thereafter an assessment was made against the stock held by defendant. That assessment was not paid. A judgment has been duly rendered against defendant for the amount of the assessment, with costs. An execution was issued on the judgment and returned wholly unsatisfied. Thereafter an order was made by one of the justices of this court directing that an execution issue against defendant's salary. An execution was duly issued pursuant to such order. This motion is made to vacate the order for the issuance of the execution and the execution issued in obedience thereto.

Defendant contends that the levy on his salary as a public officer is void as against public policy.

A serious conflict of authority exists in the adjudicated cases as to the right of creditors to reach by garnishment the salaries of public officials. It is well settled that at common law salaries, fees or other compensation due public officers cannot, on the broad ground of public policy, be reached and subjected by their creditors in attachment or garnishment. (*Owen* v. *Terrill*, 22 N. M. 373.) The principal reason suggested for this holding is that the salary of a public officer is a provision made by law for his maintenance and support, during his term, to the end that without anxiety concerning his means of subsistence he may be able to devote himself entirely to the duties of his office and the public thus have the full benefit of his knowledge and ability in the services he is selected to render, and that if he could be deprived of his means of support by garnishment presumptively his efficiency as an officer would be impaired, if not destroyed, and the public interests would suffer detriment. (12 R. C. L. 803.)

The argument of public policy as to the inconvenience and hardship which the public may suffer does not make a very persuasive appeal to me. At least equally important is the rule of law and of right, universally recognized, that debtors should pay their debts. It is common knowledge that the State and the various municipalities have experienced no difficulty in obtaining officers to do their work. Surely equally good service may be obtained from those who discharge their honest obligations as from those who evade payment and seek to escape responsibility by relying on the unsatisfactory doctrine of public policy.

The Legislature, however, undoubtedly has the power to determine its own policy on this subject with respect to the office, officers and employees within its control. In this instance we are not concerned with a constitutional officer but with one clearly within legislative control. It is generally recognized that the public policy

of a State is to be found in its Constitution and statutes, and only in the absence of any declaration in these instruments may it be determined from judicial decisions. In order to ascertain the public policy of a State in respect to any matter, the acts of the legislative department should be looked to, because a legislative act, if constitutional, declares in terms the policy of the State and is final so far as the courts are concerned. All questions of policy are for the determination of the Legislature, and not for the courts, and there is no public policy which prohibits the Legislature from doing anything which the Constitution does not prohibit. Hence the courts are not at liberty to declare a law void as in violation of public policy. (6 R. C. L. 109.)

If the legislative intent to declare as its policy that the salaries of officers may be diverted to the payment of the debts of such officers, is manifested by the language used, then the courts are bound by this declared policy with respect to the officers to whom it can be applied. (*Cavender* v. *Hewitt*, 145 Tenn. 471; *Ruperich* v. *Baehr*, 142 Cal. 190.) It is unquestionably true that in the absence of special statutory sanction the compensation of public officers and employees is not subject to garnishment. It seems to me that our statute (Civ. Prac. Act, § 684) makes the garnishee process available against the salaries and wages of public officers.

Defendant relies on *Remmey* v. *Gedney* (57 How. Pr. 217); *Emes* v. *Fowler* (43 Misc. 603) and cases cited in those decisions to sustain his position. As I view it, these authorities are not at all pertinent to the law as it now stands. The *Remmey* case arose in the New York Marine Court. An order was issued against the comptroller of the city of New York under section 294 of the Code of Procedure (the predecessor of the Code of Civil Procedure) and was designed to reach the defendant's salary. The order was vacated, principally on the ground that the wages or salary of a public officer or employee, although due, cannot be reached before it comes into his possession by a third party order in supplementary proceedings on behalf of the judgment creditor. The language of section 294 of the Code of Procedure is entirely different from section 684 of the Civil Practice Act which is the authority for the present proceeding.

Section 1391 of the Code of Civil Procedure (which is now section 684 of the Civil Practice Act) was amended by chapter 461 of the Laws of 1903 so as to provide for the issuance of a garnishee execution against the wages, debts, earnings, salary, income from trust funds or profits of the judgment debtor. The constitutionality of that statute was upheld in *Smith* v. *Endicott Johnson Corp.* (199 App. Div. 194; affd., 234 N. Y. 628; affd., 266 U. S. 291). That statute made it the duty of " *any person or corporation* " to whom such

an execution was presented to pay to the officer presenting the same the amount of such indebtedness which the execution might prescribe. The case of *Emes* v. *Fowler* (*supra*) arose under that section. In that case the judgment debtor was employed by the city of New York. An execution was issued against his salary. The court vacated the order under which the garnishee execution was issued on the ground, among others, that the law then did not provide for, nor permit, the garnishment of the salary of a public official. It is quite significant that at the next session after the rendition of this judgment the Legislature, by chapter 175 of the Laws of 1905, amended section 1391 of the Code of Civil Procedure by directing that it shall be the duty of any person or corporation, "*municipal or otherwise*," to whom such execution should be presented to make payment thereon in accordance with the terms thereof. Evidently the change in the section by the insertion of the words "*municipal or otherwise*" was for the purpose of overcoming the court's objection in the *Emes* case.

In *Osterhoudt* v. *Stade* (133 App. Div. 83) the court held that the wages or salary of a State employee could not be reached by an execution under section 1391 of the Code of Civil Procedure, as amended. The court based its decision on the ground that the State is neither a person nor a corporation as that term is ordinarily used, and is certainly not a municipal corporation. The *Osterhoudt* case was decided in June, 1909. By chapter 317 of the Laws of 1910 the Legislature enacted section 2-a of the State Finance Law. That section specifically states that the salaries and wages of State employees and officers shall be subject to all the provisions of section 1391 of the Code of Civil Procedure. It is also quite significant that subdivision 6 of section 684 of the Civil Practice Act contains special provisions for an execution against any officer or employee of any city or county.

The amendment of section 1391 of the Code of Civil Procedure in 1905 and the adoption of section 2-a of the State Finance Law in 1910 show conclusively the purpose of the Legislature to extend the operation of the garnishee statute to both municipal and State officers and employees.

There is nothing in our Constitution which prohibits legislation of this character. That being so, the legislative department of the State government has exclusive and ample power to determine the State's policy. When the Legislature, acting within its constitutional powers, has spoken upon a particular subject its utterance is the public policy of the State upon that subject.

Statutes authorizing garnishment of the salaries or wages of public officials or employees are within the Legislature's power.

(*Dunkley* v. *City of Marquette*, 157 Mich. 339; *Trow* v. *Moody*, 27 Cal. App. 403; *Stockard* v. *Hamilton*, 25 N. M. 240; *Cavender* v. *Hewitt, supra; Ruperich* v. *Baehr, supra; Kong* v. *Chillingworth*, 19 How. 428; *Lawson* v. *Lawson*, 158 Cal. 446; *Peterson* v. *Jersey City*, 89 N. J. L. 93.)

For these reasons the motion must be denied, with costs.