[S. F. No. 3648. · In Bank.—February 11, 1904.]

## GEORGE E. RUPERICH, Petitioner, v. HARRY BAEHR, Auditor, etc., Respondent.

Officers—Public Employees—Legislative Control—Garnishment—Payment of Salary on Judgment—Public Policy—Constitutional Law.—Although, as a general rule, it is against public policy to apply general statutory provisions for garnishee process to public corporations or bodies politic, yet so much of section 710 of the Code of Civil Procedure as applies to such officers and public employees as are clearly within legislative control, providing for payment out of a salary due of the amount of any unpaid judgment, an authenticated copy of which has been filed as directed with the proper auditing officer, must be accepted by the courts as declaring the legislative policy which is binding upon them. The statute is not unconstitutional as being special legislation, or as not being uniform in its operation.

Id.—Construction of Code—Exemption from Execution—Salaries Subject to Garnishment.—Section 710 of the Code of Civil Procedure is to be liberally construed with a view to effect its objects; and giving effect to the provision that when the money is paid into court "so much thereof as is not exempt from execution shall be paid to the judgment creditor, and the remainder to the judgment debtor," it is clear that officers and employees engaged in the public service may claim the exemption of "earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of the execution or attachment," under subdivision 1 of section 690 of that code, and that the salaries and wages of public officers and em-

ployees are included in the phrases "money owing," or "money which belongs to or is owing to the judgment debtor," and "amount so due or owing to such judgment debtor," used in section 710, and that such officers and employees are classed as "judgment debtors" to whom money is owing, and are subject to the garnishment authorized by that section.

ID.—APPLICATION OF LAW UNDER SAN FRANCISCO CHARTER.—The law is to be construed as allowing the auditor to "draw his warrant in favor of, or to pay into, the court," the money to apply on the: judgment; and there is no insuperable difficulty in applying the law under the San Francisco charter, which only allows the auditor to draw his warrant upon the treasurer. In such case he may draw his warrant for the amount necessary to satisfy the judgment in favor of the court or the proper officer authorized to receive money paid into the court.

ID.—SALARY OF STENOGRAPHER—PART PAYMENT ON JUDGMENT—MANDAMUS—DEMAND FOR FULL SALARY—EXCESS.—Where the demand upon the auditor was for a warrant for full payment of the salary of a stenographer employed by the city and county, part of which was applied on a judgment against him filed with the auditor, a mandate cannot be issued to compel the payment of the excess, which the auditor may pay upon demand for the correct amount.

APPLICATION to the Supreme Court for a Writ of Mandate to the Auditor of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Thomas V. Cator, and Henry C. Dibble & Dibble, for Petitioner.

W. H. Cobb and John H. Mee, for Respondent.

SHAW, J.—This is an application for a writ of mandate to compel the defendant, as auditor of the city and county of San Francisco, to audit and allow in favor of the petitioner certain demands against the city and county.

The petitioner is a stenographer in the department of electricity of the city and county, and as such is entitled to a monthly salary of ninety dollars. He served for the months of April and May, 1903, and thereafter for his salary for each of said months he presented to the auditor written demands as required by the charter, and requested that they be audited and allowed in his favor. The defendant, as auditor, refused to audit or allow the demands, justifying his refusal on the

grounds that he had been served by a creditor of the petitioner with a certified copy of a judgment for ninety-eight dollars, in favor of the creditor against the petitioner herein, rendered by the justice's court of the city and county, together with an affidavit under the provisions of section 710 of the Code of Civil Procedure, enacted in 1903 (Stats. 1903, p. 362); and he claims that this section requires him to audit and allow the demand and issue a warrant in favor of the creditor to the amount necessary to cancel the judgment, instead of in favor of the petitioner. The petitioner claims that this section of the code is inapplicable to salaries of public employees, and that, if it is applicable, it is unconstitutional. This presents the only questions for consideration in the case. The act is as follows:—

"710. The duly authenticated transcript of a judgment, for money, against a defendant, rendered by any court of this state, may be filed with the controller of the state of California, or the auditor of any county, city and county, city, or other municipal or public corporation, from which money is owing to the judgment debtor in such action (and in case there be no auditor, then with the official whose duty corresponds to that of auditor), whereupon it shall be the duty of any such official, or of such public officer with whom such transcript shall have been filed, to draw his warrant in favor of, or to pay into the court from the docket of which the transcript was taken, so much of the money, if sufficient there be, over which such state of California, county, city and county, city, or other municipal or public corporation, of which he is an official, or over which such public officer has control and custody, and which belongs to or is owing to the judgment debtor in the cause designated in said transcript, as will cancel said judgment; the money so paid into court shall be a discharge *pro tanto* of any amount so due or owing to such judgment debtor. For filing such a transcript any such official or public officer may charge a fee of fifty cents. Upon the receipt by any court of money under the provision of this act, so much thereof as is not exempt from execution shall be paid to the judgment creditor, the balance to the judgment debtor. Such transcript when so filed, shall be accompanied by an affidavit on behalf of the person in whose interest the same is filed, stating the exact amount at

the time due on such judgment, and that such person desires to avail himself of the provisions of this section.''

The reasons advanced in support of the contention that the law is inapplicable to salaries of public officers and employees are, that the phrases "money owing," "money which belongs to or is owing to the judgment debtor," and "amounts so due or owing," being words of general import applicable to ordinary debts, cannot, under a familiar rule of statutory construction, be applied to such salaries, and that the phrase "judgment debtor," upon like grounds, cannot be held to include such officers or employees.

It is true that it is generally held to be against public policy to apply general statutory provisions for garnishee process to public corporations, so as to make them subject to such process, to reach claims for money due from them to a judgment debtor. And, for the same reason, general provisions making property subject to execution or liens are construed to apply only to the property of private persons and corporations, and not to that of public corporations or bodies politic. (*Skelly* v. *School District,* 103 Cal. 652; *Witter* v. *School District,* 121 Cal. 350;[1] *Mayrhofer* v. *Board,* 89 Cal. 110;[2] *Whittaker* v. *Tuolumne Co.,* 96 Cal. 100; *Reclamation District* v. *Sacramento,* 134 Cal. 480; *Savings etc. Soc.* v. *San Francisco,* 131 Cal. 363.) The rule is said to be, that "the state is not bound by general words in a statute, which will operate to trench upon its sovereign rights, *injuriously affect its capacity to perform its functions,* or establish a right of action against it." (*Mayrhofer* v. *Board,* 89 Cal. 110.[2]) The state and its subordinate bodies perform their governmental functions through their officers and employees elected or appointed for that purpose. Therefore, any process of law which would tend to embarrass such officers or employees while in office, and hinder or distract them in the discharge of official duty, would injuriously affect the capacity of the state to perform its functions as much as, if not more than, the annoyance of having its funds subjected to garnishee process. There has been no decision on this branch of the subject in this state, but in many of the sister states the same rule of construction has been applied to such cases, and a statute making public corporations liable to ordinary

[1] 66 Am. St. Rep. 33.        [2] 23 Am. St. Rep. 451.

garnishee process has been held to furnish no authority for intercepting the salary of a public officer or employee by such means. (*Troy etc. Co.* v. *Denver,* 11 Colo. App. 368; *Lewis* v. *Denver,* 9 Colo. App. 328; *Bank* v. *Dibrell,* 3 Sneed, 379; *Pruitt* v. *Armstrong,* 56 Ala. 306; *Roller* v. *Ames,* 33 Minn. 133.) It is said that "The salary of a public officer is a provision made by law for his maintenance and support during his term, to the end that, without anxiety concerning his means of subsistence, he may be able to devote himself entirely to the duties of his office." (*Lewis* v. *Denver,* 9 Colo. App. 328.) "By reason of high considerations of public policy, the salary of a public official, whether state, county, or municipal, is not subject to garnishment; not because of any exemption right to which the officer is entitled, but because the interests of the public demand it." (*Troy etc. Co.* v. *Denver,* 11 Colo. App. 368.) "It would be very embarrassing generally, and, under some circumstances, might prove fatal to the public service, to allow the means of support of the servants of the government to be intercepted," and if the funds were thus "allowed to be diverted from their legitimate object, by process of attachment in favor of creditors, or otherwise, the functions of the government might be suspended." (*Bank* v. *Dibrell,* 3 Sneed, 379.) It may be conceded that it is as much against public policy to subject the salaries of public officers and employees to garnishee process as it is to subject the public funds to such process or the public property to liens or executions. The legislature, however, undoubtedly has the power to determine its own policy on this subject with respect to the offices, officers, and employees within its control. We are not here concerned with constitutional offices and officers, and we do not wish to be understood as holding that the act under discussion can be applied to them. But with respect to those clearly within legislative control, if it fairly appears that by this act, properly construed, the legislative intent to declare as its policy that the salaries or wages may be thus diverted to the payment of debts of such officers and employees, is manifested by the language used, then the courts are bound by this declared policy, with respect to the officers to whom it can be applied, and the rule of construction above mentioned becomes, to that extent, inapplicable.

The section in question is to "be liberally construed, with a view to effect its objects." (Code Civ. Proc., sec. 4.) It must be construed as a whole, and some effect must be given to each of its provisions if reasonably possible. It provides, among other things, that when the auditor, or other officer with similar functions, pays the money due from the state or public corporation into court, "so much thereof as is not exempt from execution shall be paid to the judgment creditor, the balance to the judgment debtor."

It was of course intended that this provision as to money exempt from execution should have some application. The legislature must have had in mind some class of persons entitled to receive money from the public funds who are entitled also to claim such money as exempt from execution. There is no such class in existence, except officers and employees engaged in public service. Subdivision 10 of section 690 of the Code of Civil Procedure exempts from execution "the earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of execution or attachment." The intention is therefore by this clause of section 710 made manifest that salaries and wages of public officers and employees are included in the meaning of the phrases "money owing," "money which belongs to," and "amounts so due or owing," and it necessarily implies that such officers and employees are among those persons classed as "judgment debtors" to whom such money is due or owing, and that they are subject to the garnishment authorized by the section.

The two objections that the law is special, in that it creates a class of debtors against whom it is not necessary to issue execution, whereas, in case of private employees, an execution is necessary as a process to reach such assets of the judgment debtor, and that it is therefore a special law regulating practice in the courts (Const., art. IV, sec. 25, subd. 3), and that if it is a general law, it is not uniform in its operation, will be considered together. A law is not special if it relates to a class, and the class is founded upon intrinsic differences, requiring or reasonably justifying different regulations. (*Rode* v. *Siebe*, 119 Cal. 521.) And a general law does not violate the constitutional provision requiring uniformity in its operation, if it applies alike to all persons or objects

within the class to which it relates. (*Vail* v. *San Diego,* 126 Cal. 35.) The fact that there has been heretofore no means by which moneys due from the state, or from its public corporations, could be reached and applied upon the debts of the persons to whom they were due, and that considerations of public policy required that public corporations and public officers and employees should not be held subject to the ordinary provisions and processes of law for the garnishment of debts and claims due or owing, sufficiently distinguishes the classes of persons and assets to which this section relates to justify the legislature in making special regulations concerning the persons concerned and the mode of reaching the assets. It does not destroy its character as a general law, nor its uniformity of operation, that its provisions in these particulars differ somewhat from the ordinary processes of attachment and execution.

Some objections are urged on account of the difficulty of making a practical application of the law in connection with the provisions of the San Francisco charter respecting the manner of auditing and paying demands on the treasury. The law requires the auditor to "draw his warrant in favor of, or pay into, the court" the money to apply on the judgment. We have punctuated the above quotation to accord with our construction of its meaning. The provision means that the auditor may himself pay the money into court, or, if he chooses, or if, from special provisions of the law or the charter under which he is acting, he is not authorized to make payments out of the treasury, then he may draw his warrant for the amount necessary to satisfy the judgment, or for the whole salary due, in favor of the court or the proper officer authorized to receive money paid into the court. The law applies generally to all public corporations, and it may be that in some cases the auditor is authorized, or will be authorized, to make such payments from the treasury. The San Francisco charter gives the auditor authority only to audit and allow demands and indorse his allowance thereon. And this indorsement appears to be the only "warrant" for its payment contemplated by that instrument. (Charter, art. IV, chap. II, secs. 3, 7.) Payment can be made by the treasurer only of such demands as have been thus allowed by the auditor. (Charter, chap. III, secs. 2, 5, 6.) When the

court, or its authorized officer, has received the warrant, or, in the case of San Francisco, the demand properly audited, allowed, and indorsed, it will be the duty of such court or officer to attend to the presentation of the demand to the treasurer and to receive the money thereon and apply the same, or the part thereof not exempt from execution, to the satisfaction of the judgment. We can see no insuperable difficulty in carrying out the purposes of the law.

For the foregoing reasons we hold that the auditor is justified in refusing to audit and allow the demand in favor of the petitioner except as to the excess above the judgment. As no demand was made except for the whole sum, a mandate cannot be issued requiring the allowance of a part only. The auditor is entitled to a proper demand before he becomes subject to a suit in *mandamus*. It may be that upon a demand for the correct amount he would comply.

The petition is denied.

Angellotti, J., McFarland, J., Henshaw, J., and Lorigan, J., concurred.

VAN DYKE, J., concurring.—I concur in the foregoing, as it is expressly limited to such offices as the legislature may create or abolish at its pleasure in the interest of the public service. As to such offices, the legislature may doubtless subject the employees or officers appointed or elected to fill the same to the garnishee process. The act under consideration, adding a new section to the Code of Civil Procedure, is, however, broad enough in its terms to cover all offices in the state. As to constitutional offices, however, the salary or compensation of the incumbents of which is provided for by the constitution, it is clearly not within the power of the legislature to interfere with the payment of such salary or compensation in the least. For instance, the constitution provides in express terms that the governor and other executive state officers "shall, at stated times during their continuance in office, receive for their services a compensation which shall not be increased or diminished during the term for which they shall have been elected." And as to the judicial department, the constitution declares "The justices of the supreme court and judges of the superior courts shall severally, at stated times during their continuance in office, receive for their

services a compensation which shall not be increased or diminished after their election, nor during the term for which they shall have been elected.'' The constitution also declares that members of the legislature ''shall not be subject to any civil process during the session of the legislature, nor for fifteen days next before the commencement and after the termination of each session.'' Clearly the garnishee process cannot be employed to intercept or reduce the salary or compensation of these officers as in the constitution provided. And the act in question as to such officers is clearly unconstitutional.

BEATTY, C. J., dissenting.—If section 710 of the Code of Civil Procedure requires a construction which makes it applicable to the salaries of legislative officers, it must by the same construction be held applicable, in terms and intention, to the salaries provided by the constitution for constitutional officers. This seems to be conceded, but Justice Van Dyke holds that as to the latter class of officers it is unconstitutional, while the principal opinion leaves this question open. According to my view of the case, the question thus left undecided is important, if not vital. A law will not be so construed as to bring it in conflict with the constitution if such construction can be avoided without disregarding the plainly expressed intention of the legislature—or, in other words, if it can be given any reasonable construction in harmony with the fundamental law.

This law is, in my opinion, at least susceptible of a construction limiting its application to debts other than salary demands, and ought to receive that construction if, according to the construction placed upon it by the court, it is even in part unconstitutional. Concurring, as I do, in the view expressed by Justice Van Dyke upon the constitutional question, I must dissent from the judgment.

Rehearing denied.