DEPARTMENT OF BANKING, APPELLEE, v. E. T. FOE ET AL.: F. A. GOOD, APPELLANT.

286 N. W. 264

FILED JUNE 2, 1939. No. 30611.

*J. C. McReynolds*, for appellant.

*Robert H. Downing, Harold Johnson, C. J. Aldrich* and *F. C. Radke, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is an appeal in a garnishment proceeding from an order of the district court for Lancaster county, entered October 12, 1938, the court ordering the garnishee, Continental National Bank, to pay into court the sum of $44.24, and the state auditor to pay into court the sum of $125, constituting 10 per cent. of the third quarterly salary due the defendant, a state railway commissioner. The motion of defendant Good for exemptions as head of a family was sustained. Motion for a new trial was overruled. Defendant Good appeals.

Counsel in their briefs detail the history of previous litigation as between the parties. Only such part thereof as may be necessary to assist in a determination of this appeal will be set out.

On November 22, 1937, the department of banking of the state of Nebraska, receiver and liquidating agent of the Cowles State Bank, Cowles, Nebraska, obtained a judgment in the district court for Webster county against the defendant Good (hereinafter referred to as defendant) in

the sum of $1,000 and costs, on stockholders' double liability as a stockholder in the Cowles State Bank. Defendant appeared, presented his defense, and did not appeal from the judgment. This appeal is from the order made in the garnishment proceedings as above stated.

Defendant assigns as error: The department of banking is not an entity and has no capacity to sue, and the judgment herein is void *ab initio*.

This court held in *Department of Banking v. Hedges, ante*, p. 382, 286 N. W. 277: "The department of banking, created by legislative enactment (Laws 1933, ch. 18; Laws 1935, ch. 16), is a legal entity, and by section 8-1,130, Comp. St. Supp. 1937, as receiver and liquidating agent of an insolvent bank, has full right and lawful authority forthwith, by a proceeding in court, to prosecute an action to collect constitutional stockholders' liability for benefit of creditors."

Defendant next assigns as error the fact that, at the general election of November 8, 1938, section 7, art. XII of the Constitution of Nebraska, establishing double liability of stockholders, was, by vote of the people, repealed, and such repeal vacated the judgment herein against the defendant and rendered all proceedings thereunder since the 8th day of November, 1938, null and void, including the garnishment proceedings hereunder, for the reason that such repeal was without a saving clause.

In *Luikart v. Paine*, 126 Neb. 251, 253 N. W. 86, it was said (p. 253): "Stockholders' double liability in banking corporations is contractual obligation and by construction constitutional provisions in effect at the time of purchase of corporate stock are material parts thereof." Practically all courts which have had occasion to pass upon the liability of stockholders in banks regard this liability as being contractual. 7 Am. Jur. 81, sec. 98. See *Luikart v. Higgins*, 130 Neb. 395, 264 N. W. 903. This has been the rule uniformly followed. Such a contractual right ought to be enforceable, inasmuch as the nature of it and the methods of enforcing it depend upon constitutional and statutory provisions creating it, and which entered into the implied con-

tract at the time the stock was purchased. We must look to these provisions as they existed prior to the repeal to ascertain the extent of the liability and the manner of enforcing it. The question presented, with reference to the repeal of section 7, art. XII of the Constitution of Nebraska, is that the repeal of such constitutional provision is complete and is not protected by any saving clause.

In *Kaliski v. Gossett*, 109 S. W. (2d) (Tex. Civ. App.) 340. it was held:

"The repeal of the constitutional provisions for stock assessments against bank stockholders without any saving clause does not abate a suit on a liability which had fully accrued before such repeal." In the body of the opinion the court said (p. 343) : "This conclusion is fully justified by *Pierce Coombes, Petitioner, v. Milton E. Getz*, 285 U. S. 434-452, 52 S. Ct. 435, 436, 70 L. Ed. 866 (the leading case on the question). * * * 'The right of this petitioner to enforce respondent's liability had become fully perfected and vested prior to the repeal of the liability provision. His cause of action was not purely statutory. It did not arise upon the constitutional rule of law, but upon the contractual liability created in pursuance of the rule. Although the latter derived its being from the former, it immediately acquired an independent existence competent to survive the destruction of the provision which gave it birth. The repeal put an end to the rule for the future, but it did not and could not destroy or impair the previously vested right of the creditor (which in every sense was a property right * * *) to enforce his cause of action upon the contract.' (*Coombes v. Getz, supra.*)

"Thus we take it that neither the repeal of the constitutional provision nor the statutes relating to shareholders' liability does not abate or otherwise affect the cause before us, but, on the contrary, we must pass upon same as though there had not been any repeal of either the statutory or the constitutional provisions." See, also, *Henry v. Alexander*, 186 S. Car. 17, 194 S. E. 649.

. Defendant attempts to distinguish the case at bar from

*Coombes v. Getz, supra,* on the ground that the court was dealing with officers and directors of a corporation who had embezzled funds, and the action was by the plaintiff, acting directly in his own interests, while in the case at bar the plaintiff had no direct interest in the funds and was acting for the benefit of another class of persons,—depositors in state banks. The principle of law is the same. The plaintiff was acting in a designated capacity for the benefit of the creditors of this particular bank.

The provision of the Constitution of the United States "declares that no state shall pass any law impairing the obligation of contracts. * * * Any enactment, regardless of its source, to which a state gives the force of law is a law within the meaning of this provision, and this includes * * * state Constitutions and constitutional amendments. * * * The repeal of a law which constitutes a contract is an impairment of its obligation." 12 Am. Jur. 24, sec. 396.

"The repeal of a constitutional provision imposing a double liability on corporate stockholders does not affect the obligation of stockholders as to liabilities incurred by the corporation prior to such repeal." 12 C. J. 723. See, also, 13 Am. Jur. 584, sec. 573.

In *In re Westchester Title & Trust Co.,* 170 Misc. 860, 10 N. Y. Supp. (2d) 190, released January 21, 1939, it was held: "The repeal of constitutional provision for liability of stockholders of bank did not affect liability which accrued prior to the effective date of repeal. Const. art. 8, sec. 7."

In *Mooney v. Drainage District,* 134 Neb. 192, 278 N. W. 368, this court held: " 'The private rights of parties which have been vested by the judgment of a court cannot be taken away by subsequent legislation, but must be thereafter enforced by the court regardless of such legislation.' *Hodges v. Snyder,* 261 U. S. 600."

The private rights of the creditors had been vested by the judgment against the defendant on his stockholders' liability. The repeal of section 7, art. XII of the Constitution of Nebraska, was subsequent thereto, which is equiva-

lent to subsequent legislation. This principle of law, as above announced, is in point.

In the instant case,—a garnishment proceeding,—the attack is made on the judgment previously entered in Webster county on the defendant's stockholders' liability. The attack is collateral. This court held in *Gwynne v. Goldware,* 102 Neb. 260, 166 N. W. 625: "A decree rendered in a case by a court having jurisdiction of the subject-matter and parties cannot be successfully assailed collaterally, and is binding on the parties and those claiming by, through or under them until it is reversed, modified or otherwise set aside." The defendant in the original suit on stockholders' liability answered, judgment was rendered against him, and he did not appeal therefrom.

Defendant contends that chapter 58, Laws 1925, is amendatory, in that it amends, by addition and by reference to it in terms, the general garnishment laws. The title to said chapter 58 is as follows: "An act to provide for garnishment of officers and employees of the state of Nebraska or any county, township, municipal corporation, municipally owned corporation, or school district." Section 1 of the act in part provides: "That all provisions, requirements, conditions and exemptions, of the garnishment laws of the state of Nebraska, shall apply to all state, county, municipal, municipally owned corporation, township and school district officers and employees, to the same extent and effect as such laws apply under the existing statutes of the state of Nebraska to officers and employees of private corporations."

This court held in *State v. Ure,* 91 Neb. 31, 135 N. W. 224: "The mere fact that an act of the legislature adopts the provisions of prior acts by reference thereto does not render the new act amendatory of the acts to which reference is made if in other respects it is a complete act in itself." The above holding was quoted in the case of *Sheridan County v. Hand,* 114 Neb. 813, 210 N. W. 273.

The act in question, as shown by the title, discloses conclusively that it purports to be an independent, separate

and new act, covering the entire subject to which it relates, and, as it is not amendatory, it does not run counter to section 14, art. III of the Constitution, providing: "No law shall be amended unless the new act contain the section or sections as amended and the section or sections so amended shall be repealed." See, also, *State v. Moorhead,* 100 Neb. 298, 159 N. W. 412, and *Richardson v. Kildow,* 116 Neb. 648, 218 N. W. 429. In the latter case it was held: "Where a legislative act, though complete in itself, refers to another act for the procedure to be taken, the latter act, *pro tanto,* becomes a part of the former to the same extent as though actually incorporated therein."

Defendant contends that sections 20-1012 and 20-1013, Comp. St. 1929, being chapter 58, Laws 1925, are unconstitutional in their entirety, null and void, and, if constitutional in any respect, have no application to those constitutional state officers whose salaries, qualifications, tenure and emoluments are fixed by the Constitution, and that the legislature has no power to provide by law for the garnishment of such officers' salaries.

We have heretofore set out the title to chapter 58, Laws 1925, and a part of section 1 of the act. The act further provides, in substance, that consent is given for garnishment suits and proceedings against the state of Nebraska and all units of government, as above set out, and provides that the section "shall apply only in case it is sought to hold and apply the earnings of such officers and employees which earnings have been earned by personal services rendered to the state" or to any subdivision of government, as heretofore set out. The second section of the act provides for the proceedings and designates how they shall be brought.

28 C. J. 181, is cited as follows: "The power of the legislature to authorize garnishment of the salaries of constitutional officers is at least doubtful. The question has been answered in the negative as to officers whose qualifications, tenure, and emoluments are fixed by the Constitution, and in the affirmative as to officers provided for by the Consti-

tution but whose compensation is fixed by the legislature."

In the case of *Stockard v. Hamilton,* 25 N. M. 240, 180 Pac. 294, the appellant contended that the office of district attorney was a constitutional one, created by the Constitution, and that the disbursing officers of the state have the right to pay the salary of this office for the purpose only for which it was designated, and that the legislature could not legislate that it should be disbursed otherwise. The court said (p. 244) : "The contention is true, in case the office is one created by the Constitution, and when the qualifications, tenure, and emoluments therefor are fixed by that instrument; but this does not apply to the office of district attorney. The Constitution itself makes no provision as to the emoluments of the office in question, but specifically provides that the district attorneys shall receive such salaries as may be provided by law, thereby giving to the legislature the plenary (full, entire, complete) power in this respect." The court held that "the salary of a district attorney may be garnished in the hands of the disbursing officer of the state."

In the case of *Ruperich v. Baehr,* 142 Cal. 190, 75 Pac. 782, the majority opinion held that the legislature undoubtedly had the power to determine its own public policy in respect to subjecting the salaries of public officers and employees within its control to garnishee process, and the legislative intent was held to declare the salaries or wages of officers and employees of the state government within the control of the legislature may be diverted to the payment of debts of such officers and employees. In the opinion appears this statement (p. 194) : "We are not here concerned with constitutional offices and officers, and we do not wish to be understood as holding that the act under discussion can be applied to them." This question was not in the case, which involved the salary of a stenographer in the department of electricity of the city and county of San Francisco. The defendant relies on the concurring opinion of Justice Van Dyke, who stated, in substance, that "The act under consideration, adding a new section to the Code of Civil

Procedure, is, however, broad enough in its terms to cover all offices in the state," and that the legislature did not have power to interfere with the payment of salaries or compensation of constitutional officers, wherein the salary or compensation of such officers is provided for by the Constitution, and gave this example: "The governor and other executive state officers 'shall, at stated times during their continuance in office, receive for their services a compensation which shall not be increased or diminished during the term for which they shall have been elected;'" and determined that the garnishee process cannot be employed to intercept or reduce the salary or compensation of officers as in the Constitution provided, and that the act was clearly unconstitutional in such respect. It will be noted in the California case that, while the direct question did not involve a constitutional officer, the concurring opinion manifestly determined the constitutionality of the act, as it related to constitutional officers, so we have the holding, as contended for by the defendant in the instant case, in the concurring opinion.

Section 20, art. IV of the Constitution of Nebraska, provides for the creation of the railway commission in 1906, fixing the term of office of the commissioners, their powers and duties, and stating: "Compensation shall be fixed by the legislature." Section 3, art. XVII of the Constitution adopted in 1920, provides: "Until otherwise provided by law the following salaries shall be paid: * * * members of the state railway commission, each $5,000 per annum."

In the case of *State v. Hall,* 125 Neb. 236, 249 N. W. 756, this court held:

"The Constitution gives to the legislature the power to increase or decrease the salaries of state officers, provided it acts within constitutional limitations.

"The constitutional prohibition against changing the salary of such officer during his term of office, as found in section 19, art. III of our Constitution, is explicit and unambiguous."

Section 19, art. III, Const., reads: "The Legislature shall

never grant any extra compensation to any public officer, agent, or servant after the services have been rendered nor to any contractor after the contract has been entered into nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof be increased or diminished during his term of office."

In *State v. Hall, supra,* the respondent referred to section 3, art. XVII of our Constitution, fixing the salaries of officers until otherwise provided by law, and stated that it was "an express grant of power to the legislature to fix the salaries." The court said (p. 241) : "This is a strained construction of the law, for the language gives the legislature the power, which otherwise it would not have, to change the salaries of such officers, but such change must not be made in a manner to violate other provisions of the Constitution relating thereto." It was said that, placing the two sections together, they would read: " 'Until otherwise provided by law the following salaries shall be paid: * * * members of the state railway commission, each $5,000 per annum. The legislature shall never grant any extra compensation to any public officer * * * after the services have been rendered * * * nor shall the compensation of any public officer * * * be increased or diminished during his term of office, including any officer whose compensation is fixed by the legislature subsequent to the adoption hereof.' "

The defendant contends that the sole and only power which the legislature was granted by the Constitution of 1920 is found in section 25, art. IV of the Constitution, which in part reads: "The officers provided for in this article shall receive such salaries as may be provided by law, but the salary of no officer shall be changed more than once in eight years;" that such section of the Constitution should be construed with section 3, art. XVII of the Constitution, as heretofore set out; and that the term "provided by law," as used in the Constitution, means as provided by the Constitution itself; that the sole power to change a salary or schedule of salaries once in eight years

does not change the meaning of the expression as so used, and that the legislature does not have plenary power; that is, full, complete and final power.

The fundamental question involved may be said to be under section 19, art. III of the Constitution, referring to that part thereof: "Nor shall the compensation of any public officer, including any officer whose compensation is fixed by the Legislature subsequent to the adoption hereof be increased or diminished during his term of office."

In this connection, in the case of *State v. Surety Finance Co.*, 42 Ariz. 42, 21 Pac. (2d) 929, the court passed upon the question of whether or not the salary of a constitutional officer of the state could be lawfully garnished; the salary of the secretary of state in the years 1931-1932 being involved. The office of secretary of state was provided for by the Constitution and the salary was fixed therein until otherwise provided by the legislature. Arizona Const. art. V, secs. 1, 13. At the time of the garnishment, his salary was fixed by the legislature. In the instant case, the salary is fixed by the Constitution, but subject to regulation by the legislature, as indicated in *State v. Hall, supra,* above set out. In the Arizona case, in speaking of section 17, part 2, art. 4, of the Constitution of Arizona, which provides that the salaries of public officers shall not be increased or diminished during their terms of office, it was stated in the opinion (p. 44) :

"It is said the application of an officer's salary or wages, or any part thereof, through the process of garnishment to the payment of his debts, is a diminishing thereof, and there is some authority for such a contention. (Citing the concurring opinion of Justice Van Dyke in *Ruperich v. Baehr, supra.*) But it occurs to us that the officer gets the full benefit of his salary, whether it is paid to him directly or applied by the law on his honest debts. When salary is applied on what an officer owes, it benefits him, or his estate, just as much whether its application be through his voluntary act or by compulsion of law. In the latter case the only thing he is deprived of is the liberty of spending

his salary as he pleases, but in this his situation is not at all different from any other debtor who is forced to pay his debts. In *Hanson v. Hodge,* 92 Wash. 425, 159 Pac. 388, it was held that such an application of an officer's salary did not diminish it.

"The matter of the public policy of the state is entirely in the hands of the legislature, except as restrained by the Constitution." Such is the law in this state.

The garnishment act complained of by defendant was in force when he was a candidate for and was elected railway commissioner. If it provided a means for diminishing his salary, it so provided at the time he became a candidate for the office. He must thereby have assented to such provision to the extent that it might be so applied to him. We see no reason, nor is any reason apparent, under the laws of this state, why the remedy should not extend to creditors of constitutional state officers, where the legislature has the power to increase or decrease the salaries of such officers, within the limits prescribed by the Constitution. The fact that a constitutional officer may owe certain personal obligations incurred by him is, apparently, his own personal affair, and, in the exercise of his expenditure of funds and creation of credit by his own act, he stands in the same relation as any other individual of the state who may owe a personal obligation. We do not concur in the conclusions reached by the concurring opinion in *Ruperich v. Baehr, supra.*

The garnishment law of this state (Comp. St. 1929, secs. 20-1012, 20-1013; Laws 1925, ch. 58) is not violative of the Constitution of Nebraska, especially as to that part of section 19, art. III. There is no direct or implied restraint in our fundamental law upon the powers of the legislature to subject the compensation of constitutional officers of this state to demands of their creditors through the process of garnishment. The salary is not diminished; it is merely subject to legal process to enforce payment of the officer's obligation. The officer's act contributes to the diminishment of the salary, not the legislature.

Defendant contends that the act in question is unconstitutional in that it is unreasonable, arbitrary, class legislation, violative of the Fourteenth Amendment to the Constitution of the United States. The act is broad; it subjects to garnishee process salaries of all state, city, county, municipal or municipally owned corporation, township and school district officers and employees, meaning all of the officers and employees of such subdivisions of government. It operates uniformly and alike on every member of the class designated and meets the conception of the law of this state on the subject. See *State v. Berka,* 20 Neb. 375, 30 N. W. 267.

In *State v. Hall,* 129 Neb. 669, 262 N. W. 835, it was held: "The legislature may make a reasonable classification of persons, corporations and property for purposes of legislation concerning them, * * * to be valid the law must operate uniformly and alike upon every member of the class so designated."

A case in point is *Cavender v. Hewitt,* 145 Tenn. 471, 239 S. W. 767, wherein a statute, authorizing garnishment of county and municipal officers and employees and exempting state officers and employees therefrom, was attacked on the ground that it constituted class legislation. The court held that it did not constitute class legislation, and it was stated in the opinion (p. 476) : "The constitutional provision invoked does not prohibit the legislature from making class distinctions in the enactment of laws. It simply prohibits the granting to any individual or individuals rights, privileges, immunities, and exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law." To like effect is *Ruperich v. Baehr, supra,* where a garnishment law of California was held not to be class or special legislation if it relates to a class, and the class is founded upon intrinsic differences, requiring or reasonably justifying different regulations. Without restating the substance of this opinion, we refer thereto as previously set out.

Subject to the rules of proper classification, public offices and their incumbents may be divided into classes for purposes of legislation concerning them. *State v. Hall, supra.*

A general law does not violate the constitutional provisions requiring uniformity in its operation, if it applies to all persons and objects within the class to which it relates. The act in question is not violative of the Fourteenth Amendment to the Constitution of the United States, and is not unreasonable and arbitrary class legislation.

Other assignments of error claimed by defendant are held to be without merit.

AFFIRMED.