[L. A. No. 17792.   In Bank.   Dec. 2, 1941.]

EDITH MAUD WILSON, Appellant, v. BYRON J. WALTERS, Respondent.

W. Cloyd Snyder for Appellant.

Pierson & Block for Respondent.

CARTER, J.—Plaintiff, as a judgment creditor of defendant, complied with the provisions of section 710 of the Code of Civil Procedure, authorizing a garnishment or levy of execution against the salary of a public officer or employee. Defendant is a judge of the municipal court in the city of Los Angeles and there was payable to him the salary of that office. Pursuant to said section 710 the documents necessary to garnish that salary were filed with the County Auditor of Los Angeles County, who thereafter paid the same into the Superior Court for Los Angeles County to be by it disbursed according to law. On May 31, 1940, defendant filed a notice of motion for an order releasing the money so held by the superior court, which motion was based upon three grounds, namely, that defendant's salary as a municipal court judge was not subject to garnishment; that defendant had been discharged in bankruptcy; and that the salary was exempt from execution under section 690.11 of the Code of Civil Procedure because it was earned within the period of thirty days next preceding the filing of the abstract of judgment with the county auditor. The court made its order granting the motion, stating therein: " . . . defendant's discharge in bankruptcy does not release the claim of plaintiff's judgment herein. The motion of defendant to release

the balance of money under garnishment is granted upon the sole ground that defendant is . . . a judge of the Municipal Court. . . . '' Plaintiff appeals from that order.

Section 710 of the Code of Civil Procedure provides that whenever a judgment for the payment of money is rendered against a defendant to whom money is owing and unpaid by the state, county, city, etc., the judgment creditor may file an abstract of the judgment and affidavit with the appropriate fiscal officer who thereupon pays the money so owing into court. The court then pays to the judgment creditor the sum necessary to satisfy the judgment, excepting however, any portion thereof that is exempt from execution. That section apparently includes officers and employees of the state and various political subdivisions thereof, excepting therefrom, however, as expressed in the last sentence thereof, the following: ''Nothing in this section shall authorize the filing of any abstract or transcript and affidavit against any wages, or salary owing to any *elective officer of this State whose salary is fixed by section 19 of Article V of the State Constitution.*'' (Emphasis added.) Manifestly, in order to qualify for that exception the officer must be: (1) A state officer, (2) An elective officer, and (3) One of the officers whose salary is fixed by the constitutional provision to which reference is made. A judge of a municipal court is an elective officer, being chosen by the vote of the electorate in the municipality in which the municipal court is established. (Const., art. VI, sec. 11.) Whether or not he is a state officer need not be determined inasmuch as he is not one of the officers whose salary is fixed by section 19 of article V of the California Constitution. That section fixes the salaries of the Governor, Lieutenant Governor, Secretary of State, Controller, and Surveyor General (the Attorney General is also mentioned but is affected by article V, section 21), and provides that the legislature may diminish but not increase the salaries so fixed, except that the salaries of those officers may not be increased or decreased during the term for which they shall have been elected. It follows therefore that defendant, a judge of the municipal court, does not fall within the exception specified by section 710 of the Code of Civil Procedure.

Defendant urges, however, that there is another group of officers excepted from that code section which is cre-

ated by implication, and that included therein are all so-called "constitutional officers," that is, officers who are provided for by the Constitution, and that a judge of a municipal court is a constitutional officer. Assuming but not deciding that a judge of the municipal court is a constitutional officer, we cannot agree with defendant's contention. It was long the accepted theory that public policy, invoked and declared by the courts, prevented the garnishment of the salaries or wages of any officers or employees of the state or other political subdivisions either by attachment before judgment or levy of execution thereafter. (28 Corpus Juris 174, *et seq.*; *Lawson* v. *Lawson,* 158 Cal. 446 [111 Pac. 354] ; *Ruperich* v. *Baehr,* 142 Cal. 190 [75 Pac. 782] ; *Trow* v. *Moody,* 27 Cal. App. 403 [150 Pac. 77] ; *Vaughn* v. *Condon,* 52 Cal. App. 713 [199 Pac. 545] ; *Walker* v. *Rich,* 79 Cal. App. 139 [249 Pac. 56] ; and *Irilarry* v. *City of San Diego,* 186 Cal. 535 [199 Pac. 1041].) Various reasons were advanced as the foundation for that rule including the sovereign and public character of the garnishee and the lack of privity between the garnishee and judgment debtor. The most common basis for that public policy is expressed in *Ruperich* v. *Baehr, supra,* at page 193 :

"The state and its subordinate bodies perform their governmental functions through their officers and employees elected or appointed for that purpose. Therefore, any process of law which would tend to embarrass such officers or employees while in office, and hinder or distract them in the discharge of official duty, would injuriously affect the capacity of the state to perform its functions as much as, if not more than, the annoyance of having its funds subjected to garnishee process."

The same policy has been urged as a ground for construing statutes, such as section 710, to the end that they do not include public officers and employees. (*Ruperich* v. *Baehr, supra.*) ▮ The declaration of public policy is essentially a legislative function and although the courts occasionally invade that field, a declaration by the legislature is paramount. ▮ In enacting section 710 the legislature has made such a declaration with respect to that public policy concerning garnishments by a judgment creditor which is contrary to that established by the courts. (*Ruperich* v. *Baehr, supra.*) The last cited case was the first in California

to construe a statute authorizing garnishment by a judgment creditor which *prima facie* was applicable to public officers and employees and it was there held that the salary of an employee of the city and county of San Francisco was subject to garnishment by a judgment creditor under section 710 of the Code of Civil Procedure. The court did remark in that case that it was not there passing upon the issue with respect to "constitutional offices and officers" but only on those "clearly within legislative control," such as the particular employee involved; however, that cannot be said to be a determination that the section does not apply to constitutional officers. Likewise, the statement in *Lay* v. *Hammond*, 212 Cal. 665 [300 Pac. 10], concerning the salaries of constitutional officers was not necessary for the decision. (See also *Payne* v. *Baehr*, 153 Cal. 441 [95 Pac. 895] ; *Lawson* v. *Lawson, supra.*) In *Lawson* v. *Lawson, supra,* it was held that the salary of a justice of the peace could be garnished under section 710. The court again referred to a possible distinction between constitutional officers and those created by the legislature, but did not decide the point. Its decision was predicated on the proposition that there was no constitutional provision inhibiting the garnishment of the salary of a justice of the peace. In *Trow* v. *Moody, supra,* it was determined that the salary of a deputy treasurer of a municipal corporation was subject to garnishment under section 710. Finally, in *Gamble* v. *Utley,* 86 Cal. App. 414 [260 Pac. 930], it was held that the salary of a district attorney of a county was not subject to garnishment because it was a constitutional office, that is, the Constitution provided that there should be a district attorney for every county who shall receive a salary to be fixed by the legislature. That case therefore was the first one squarely deciding that section 710 was not applicable to a constitutional officer; a constitutional officer being defined as one whose office was created by the Constitution and which was not subject to the will of the legislature. Insofar as that case is in conflict with the views herein expressed and for the reasons herein stated, it is disapproved. The basic reasoning for exempting, by implication, so-called constitutional officers from section 710 is not substantially different than the foundation for the public policy protecting the salaries of all public officers and employees from execution, which was declared by the courts. As we have seen, section 710 was a declaration

by the legislature of a public policy contrary to that expressed by the courts. The reason for the rule having been eliminated in one instance, it is likewise inapplicable as to the other.

It is true, of course, that if there is in fact a constitutional restriction against the garnishment of the salaries of certain public officials, then the legislature could not lawfully enact a statute to the contrary. But we find no such inhibition in the Constitution. Even assuming as we have, but not deciding, that the office of judge of a municipal court is a constitutional office, that is, an office created and provided for by the Constitution, we do not believe that such fact alone constitutes a constitutional prohibition against the legislature authorizing the garnishment of the salary of such officer. The only possible way in which such a constitutional inhibition could be said to exist would be by *implication*. And the only basis for that implication is that public policy is said to require that the legislature must not be permitted to interfere with, or in any way affect the efficiency or functions of an officer whose office is created by the Constitution; and that authorizing the garnishment of such officer's salary has that result. That is no longer the policy of this state, and in any case, it is of extremely doubtful merit. Making it possible for a judgment creditor to realize upon the obligations justly owed by his debtor is certainly a sound and just policy. It cannot be said to be detrimental to the public interest to expect the same integrity and duty with respect to satisfying his judgment obligations of a constitutional officer as of any other officer or any other person. To draw the implication that the Constitution, by creating an office, thereby exempts the salary of the incumbent from payment of his debts, it is necessary to assume a condition will exist that is more imaginary than real. It would have to be accepted that by merely permitting his salary to be garnished his effectiveness in office will be destroyed, and that the office so created will be to an extent at least, impaired and destroyed. That assumption is manifestly highly speculative and conjectural. In this connection it is worthy of note that by a process of reasoning quite analogous with that urged by defendant, it was long the rule that the salary of a state officer or employee was not subject to federal taxation and *vice versa*. (See *Collector* v. *Day*, 11 Wall. 113 [20 L. Ed. 122]; *McCulloch* v. *Maryland*, 4 Wheat. 316 [4 L. Ed. 579].)

The basis of that rule was *implied* from the United States Constitution on the theory that the power to tax involved the power to destroy, and that one sovereignty could not impair the exercise by the other of its powers, and that a taxation of the salaries of employees or officers, of one by the other, would have that result. That premise has been abandoned by the Supreme Court of the United States and is no longer the law. (*Graves* v. *New York*, 306 U. S. 466 [59 Sup. Ct. 595, 83 L. Ed. 927, 120 A. L. R. 1466].) Furthermore, it is worthy of note that the Supreme Court of the United States has overruled prior cases and held that the salary of a federal judge may be subjected to federal taxation although the Constitution of the United States (art. III, sec. 1) provides that the salary of a judge shall not be diminished during his term of office. (*O'Malley* v. *Woodrough*, 307 U. S. 277 [59 Sup. Ct. 838, 83 L. Ed. 1289, 122 A. L. R. 1379].) There are well reasoned cases in accordance with the views herein expressed. (*Department of Banking* v. *Foe*, 136 Neb. 422 [286 N. W. 264, 123 A. L. R. 894]; *State* v. *Surety Finance Co.*, 42 Ariz. 42 [21 Pac. (2d) 929].)

We conclude therefore that the mere fact that an officer is a constitutional officer, that is, the incumbent of an office created by the Constitution, does not exempt him from the provisions of section 710 of the Code of Civil Procedure, unless he is one of the officers expressly exempted by that section, that is, one who is elective and whose compensation is fixed by article V, section 19 of the Constitution. ▮ This is consonant with the intent of that section which by its terms is comprehensive. It should receive a liberal construction. (*Ruperich* v. *Baehr, supra,* 195.)

▮ There is no constitutional provision which forbids the application of section 710 to constitutional officers. It has been suggested that a provision prohibiting the increase or decrease of an officer's salary during his term of office would constitute such a prohibition. What we have heretofore said is pertinent to the point that in our opinion there is no merit in such a proposition. (See *Department of Banking* v. *Foe, supra; O'Malley* v. *Woodrough, supra.*) In any event there is no such constitutional provision applicable to judicial officers. Prior to 1924, section 17 of article VI of the Constitution contained such a provision but it was abrogated by section 11 of article VI, which provided that: "The compensation of the justices of or judges of all courts of record

shall be fixed, and the payment thereof prescribed, by the Legislature.'' (See *Sevier* v. *Riley*, 198 Cal. 170 [244 Pac. 323].) A municipal court is a court of record. (California Constitution, art. VI, sec. 12; 6 Cal. Jur. Ten-Yr. Supp. 733.)

The argument is advanced that permitting the garnishment of defendant's salary would constitute an unconstitutional interference with a municipal affair, he being the judge of a municipal court in Los Angeles, a charter city. It has been declared that the constitution of municipal courts from every viewpoint, except only that of the bare question of whether there shall or shall not be one in any given locality, is a state rather than a municipal affair. (*Chambers* v. *Terry*, 40 Cal. App. (2d) 153, 158 [104 Pac. (2d) 663].) The salaries of judges of municipal courts are fixed by the legislature. (California Constitution, art. VI, sec. 11.) Therefore, legislation with reference to the garnishment of the salary is not a municipal affair.

The result is the same if it be conceded that the matters with respect to a municipal court judge and the payment of his salary is a municipal affair. The most that could be said is that such municipal affair is *incidentally* affected by section 710 authorizing garnishment. If a state statute affects a municipal affair only incidentally in the accomplishment of a proper objective of state-wide concern, then the state law applies to charter cities. (*Dept. of Water & Power* v. *Inyo-Chem. Co.*, 16 Cal. (2d) 744 [108 Pac. (2d) 410].)

Section 710 clearly relates to a matter of state-wide concern as distinguished from a municipal affair. (*Dept. of Water & Power* v. *Inyo-Chem. Co., supra.*) Furthermore, what we have heretofore said with relation to the purported public policy against the garnishment of salaries of public officers is also pertinent here as showing that such garnishment is not in reality an interference with municipal affairs.

Turning to the discharge in bankruptcy as a ground for the release of the money levied upon, the record shows that the complaint in the action which ultimately resulted in plaintiff's judgment, the execution of which is here involved, was entitled ''Complaint for Damages and Breach of Contract.'' It contained four counts, one being for money had and received; one for damages for false and fraudulent representations made by defendant with the intent to deceive plaintiff and have her act thereon and upon which plaintiff

relied and by which she was induced to advance money to defendant and to take defendant's promissory note; one upon said note; and one upon an oral contract for a loan of money. It is apparent that all of the counts involved the same transaction and same money. The pleading of the actual fraud was complete and sufficient. Defendant's answer denied the allegations of fraud, but after it was filed he stipulated that judgment might be taken against him in the following language, in part: " . . . and the defendants waive trial, findings of fact and conclusions of law and stipulate that judgment be taken and entered against them, the said defendants by confession, *in accordance with the allegations of the complaint herein.*" (Emphasis added.) The form of judgment was agreed upon in the stipulation and read in part: "The plaintiff having filed her complaint herein praying for judgment against defendants upon certain *allegations as stated in the complaint,* and the defendant Byron J. Walters having answered said complaint personally without counsel, and the defendant William B. Johnston having filed no answer nor made any appearance herein, and the said cause having been set for trial before a jury and the defendants having signed and filed a stipulation for judgment herein waiving trial, findings of fact and conclusions of law, and the said defendants having stipulated that *judgment may be taken and entered herein in accordance with the allegations of the complaint in certain amounts* as hereinafter set forth. . . . " (Emphasis added.) That judgment was accordingly entered on August 17, 1932. Plaintiff brought an action on that judgment in 1937, and defendant having failed to appear default judgment was entered by the clerk on August 20, 1937. In response to voluntary proceedings therefor defendant was discharged in bankruptcy on August 10, 1939. It does not appear whether or not plaintiff was listed as a creditor, filed a claim or objected to the discharge, in the bankruptcy proceedings.

With respect to those liabilities not included in a discharge in bankruptcy, the Bankruptcy Act as amended in 1938, provides: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as . . . are liabilities for obtaining money or property by false pretenses or false representations. . . . " (11 U. S. C. A. 35.) When property or money has been obtained by fraudulent representations and the remedy for the liability thereby cre-

ated may be predicated on either contract or tort (fraudulent representations), such liability is not cancelled by a discharge in bankruptcy even though the creditor makes his claim on contract rather than on the fraud in the bankruptcy proceedings and the claim is allowed. He is still entitled to recover the difference between the amount received on the allowance and the damages actually suffered. There is no waiver of the tort liability. (*Friend* v. *Talcott,* 228 U. S. 27 [33 Sup. Ct. 505, 57 L. Ed. 718].) It is immaterial whether or not plaintiff proved her claim in the bankruptcy proceeding because if the liability is one excepted from the discharge by the Bankruptcy Act, it is not canceled by the discharge. (*Friend* v. *Talcott, supra;* 11 U. S. C. A. 35.) The mere fact that the liability excepted from the discharge has been reduced to judgment does not take it out of the exception; it is the nature of the liability itself which is the determining factor. (8 C. J. S., Bankruptcy, secs. 563, 573.) And the fact that a judgment is obtained on a judgment, the latter being based on the excepted liability, does not alter the rule. (*In re Bernard,* 278 Fed. 734.)

██ The sole test of whether or not a liability is discharged in bankruptcy is not whether the claim is susceptible of proof in the bankruptcy proceedings under the bankruptcy laws. If a claim is not provable then for that reason alone it is not discharged by bankruptcy. But in addition thereto a claim or liability which falls within the class expressly excepted by the Bankruptcy Act (11 U. S. C. A. 35) from the discharge, is not discharged even though it is a provable claim. The case of *Marr* v. *Superior Court,* 30 Cal. App. (2d) 275 [86 Pac. (2d) 141], relied upon by defendant, insofar as its holding is to the contrary is disapproved. The District Court of Appeal in that case erroneously relied upon *Crawford* v. *Burke,* 195 U. S. 176 [25 Sup. Ct. 9, 49 L. Ed. 147], and *Tindle* v. *Birkett,* 205 U. S. 183 [27 Sup. Ct. 493, 51 L. Ed. 762], in holding that a liability arising from fraudulent representations was dischargeable in bankruptcy where a note was also given in the transaction which made the claim provable in bankruptcy proceedings. The Crawford and the Tindle cases were decided under the Bankruptcy Act as it existed prior to its amendment in 1903. Under the law then existing the express exception from the discharge of certain liabilities founded upon fraudulent representations was lim-

ited to those instances where the liability had been reduced to judgment. The liabilities in those cases (Crawford and Tindle), not having been reduced to judgment, could not therefore fall within the express exceptions; thus, the court was concerned only with whether or not they were susceptible of proof. It determined that they were provable because the liability could be founded on contract as well as tort, and therefore dischargeable. But since the 1903 amendment the liability does not need to be reduced to judgment to fall within the express exceptions. Furthermore, the liability here involved had been reduced to judgment prior to bankruptcy.

It cannot be said that plaintiff waived the tort, the claim based upon fraudulent representations, and relied upon contract in her action and is thereby foreclosed from asserting that her claim is based on fraud and not discharged in bankruptcy. The designation of her complaint at the beginning thereof as being for damages and breach of contract is of no significance. She stated counts both in contract and fraud, the stipulation for judgment and the judgment recited that the latter was ''in accordance with the allegations of the complaint.'' Therefore, it cannot be said that the judgment is not predicated on fraud, or that the liability on that basis was abandoned. (See *Mathewson* v. *Naylor*, 18 Cal. App. (2d) 741 [64 Pac. (2d) 979]; *Zimmern* v. *Blount*, 238 Fed. 740 [151 C. C. A. 590]; *Blumberg* v. *Louis Henne Co.* (Tex. Civ. App.), 5 S. W. (2d) 1015; *Gehlen* v. *Patterson*, 83 N. H. 328 [141 Atl. 914]; and *Friend* v. *Talcott, supra.*)

The affidavits with respect to what portion, if any, of defendant's salary is exempt from execution under the exemption laws (Code of Civil Procedure, sec. 690.11) are conflicting and a determination on that issue should be made by the trial court.

The order is reversed with directions to the trial court to determine what, if any, portion of defendant's salary so levied upon is exempt under section 690.11 of the Code of Civil Procedure, and thereupon enter an order directing the disbursement of such portion to defendant, and any balance remaining to plaintiff in partial satisfaction of her judgment against defendant.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Houser, J., and Traynor, J., concurred.