[File No. 6900]

FEDERAL DEPOSIT INS. CORPORATION, a foreign corporation, as Receiver of the Farmers & Merchants Bank, Elgin, North Dakota, an insolvent banking corporation, Respondent, v. C. O. LEVORSEN, Appellant.

(11 NW(2d) 448)

Opinion filed October 6, 1943.  Rehearing denied November 5, 1943

*J. K. Murray* and *H. P. Jacobsen,* for appellant.
*Halvor L. Halvorson,* for respondent.

MORRIS, Ch. J.  This is an action to recover the statutory superadded liability on ten shares of bank stock.  It is brought by the receiver of

120

the Farmers and Merchants Bank of Elgin, a state bank. The bank was taken in charge by the State Examiner on October 30, 1937, judgment was entered declaring it to be insolvent on November 30, 1937, and the plaintiff thereafter was named as receiver by the district court.

The defendant was a former owner of ten shares of stock in the defunct bank which he transferred to one J. G. Sept on August 13, 1937. The defendant appeals from the judgment of the district court finding him liable for the superadded liability on the stock.

The history of the stock in question and the transactions surrounding its transfer disclose that it was acquired by the defendant on January 22, 1936. Prior to that date it was owned by Sept, who had been cashier of the bank. Sept had resigned and the defendant was appointed cashier in August 1935. It was deemed desirable that the defendant become a director. The law required that every director must own in his own right, free from hypothecation, pledge or debt, at least ten shares of stock of the banking association of which he became director. It also provided that he take an oath which included among other things the statement "that he is a bona fide owner of the number of shares of stock required by this Act to become a director, standing in his own name on the books of the association, and that said stock is in his possession and control or in the possession of the State Examiner and is not hypothecated or in any way pledged as security for any debt." Chapter 96, § 26, ND Sess. Laws 1931.

Sept testified that when the stock was assigned to the defendant, it was just turned over to him for the purpose of putting the defendant in a position to qualify as a director and officer of the bank and that the stock was neither sold nor given to the defendant. He further stated that: "Both of us knew at the time that he had to have 10 shares to act in the capacity that he was going into, and that he had talked to one or two of the other directors. They said they had (no) extra shares, so I told him he could have mine with the possibility that at a later date I probably could make a deal with him to sell it to him, but we never had any price."

The defendant's testimony agrees with that of the plaintiff on these points except as to the possibility of purchase.

After the defendant became a director he also served as president

for a time. The certificate of stock was filed with the State Examiner and remained in his office until about August 16, 1937. The minutes of the bank show that at a directors meeting held on Friday the 13th of August, 1937, the defendant's resignation as president was accepted and that "J. G. Sept's oath of office as director was taken and forwarded to the State Examiner together with his qualifying stock certificate." These minutes also show the adoption of the following resolution:

"Whereas, the bank has among its assets various items of an undesirable nature of less than book value which seriously impairs its capital, and

"Whereas, the stockholders are unable to replace the capital impairment with cash and all efforts toward the assumption of the deposit liability by some other bank having failed, now

"Therefore, be it resolved by the Board of Directors that the bank shall discontinue its operations; that it be turned over to the State Banking Department for liquidation, and that the Cashier be instructed to ask the State Examiner to take charge of its affairs on a date to be fixed by the Officers of the bank on or before November 1, 1937."

The bank continued to operate until October 30, 1937, and the defendant continued in his capacity as cashier.

Sept was not present at the directors meeting above described. He states that he does not remember seeing the certificate for the qualifying shares which were turned back to him by the defendant, but he does remember signing a receipt therefor. Neither does he remember signing the oath as director, referred to in the minutes, although he admits that his signature thereon is genuine. Moreover he states that he did not know of the resolution to liquidate the bank.

The defendant testifies that Sept actually received the stock certificate and that he told Sept about qualifying as a member of the Board of Directors and obtained Sept's oath of office.

The plaintiff's first contention is that the transfer of the stock by the defendant to Sept was fraudulent as to creditors of the bank and as to them the defendant continued to be the owner of the stock and is therefore liable for the superadded liability. The trial court found that there was no proof of actual fraud and such fraud as may have been

perpetrated is based upon constructive fraud or estoppel. Our examination of the record leads us also to the conclusion that there was no actual fraud perpetrated by the defendant in returning the stock to Sept. Whether Sept knew he was being qualified as a director to take the place of the defendant on the Board is immaterial. The conclusion is inescapable; that Sept knew that the stock was being assigned to him. He accepted it and signed a receipt for it. It represented the same shares of stock which he had turned over to the defendant by a transaction which he himself says was neither a sale nor a gift. While the first transaction may have been questionable, the return of the stock to Sept bears no indication of fraud. It cannot be said that the defendant continued to be the owner.

The trial court based its determination on a theory of estoppel and found "that the defendant, was the record owner of said stock when said bank became insolvent, August 13th, 1937, at which time he had knowledge of its financial condition and transferred his stock with that knowledge and by reason of the matters and things hereinbefore set forth, is now estopped from denying such ownership, and liability for assessment." The consideration of this point involves the statutes fixing the liability of stockholders and former stockholders. There being no actual fraud there can be no estoppel unless the defendant transferred the stock in derogation of the rights of creditors which the receiver represents in this action.

At the time the defendant acquired the stock from Sept the responsibility of holders of stock in state banks was defined by chapter 96, § 22, ND Sess. Laws 1931 as follows: "The shareholders of every association organized under this act shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association made or entered into to the extent of the amount of his stock therein at the par value thereof, in addition to the amount invested in and due on such shares. Such individual liability shall continue for one year after the recording on the books of the association of any transfer or sale of stock by any stockholder or stockholders."

That section was later amended by chapter 95, ND Sess. Laws 1937. The amendment omitted entirely the last sentence above quoted but

retained the remainder of the old law. Thus, after the amendment became effective July 1, 1937, the law contained no provision for continuing the liability of a former stockholder after the stock had been transferred to someone else by a bona fide transaction.

The 1937 amendment also contains a provision setting forth procedure whereby the superadded liability of bank stockholders might be completely terminated. The plaintiff argues that the fact that this procedure is inserted prevents the omission from operating as a repeal of the after transfer. He asserts that this procedure was the only purpose for enacting the amendment and that compliance therewith is a condition precedent to the relief of a stockholder from any liability whatever. This is contrary to the general rules of construction of amendments that omit portions of the act amended. When an amendatory act sets forth the entire section amended, it is to be construed as introduced into the place of the repealed section and operates, as to all acts done subsequently thereto, as though the amendment had been a part of the original statute. People v. Sweetser, 1 Dak 308; 46 NW 452. It follows that an amendatory act which purports to set out in full all that it intends to contain operates as a repeal of anything contained in the old act and omitted from the amendment. Crawford, Statutory Construction, § 305; 59 C.J. p. 1096.

"In construing an act amendatory of a statutory provision, it is undoubtedly the rule that, when the Legislature declares an existing statute to be amended" to read as follows, "as done here, that body evinces the intention to make the new act a substitute for the amended statute, exclusively; only those portions of the old law repeated in the new are retained, and all portions omitted are repealed." State ex rel. Nagle v. Leader Co. 97 Mont 586, 37 P(2d) 561.

From the foregoing authority it is clear that the 1937 amendment repealed the provision that "such individual liability shall continue for one year after the recording on the books of the issuance of any transfer or sale of stock by any stockholder or stockholders."

It is argued that the superadded liability continued despite the 1937 amendment because the stock was acquired by the defendant prior to the change in the law. It is also urged that at the time of the transfer to Sept the bank was insolvent and that this fact attached a liability to

the stock in the hands of the defendant which continued for a year after the transfer.

Reverting to a consideration of the effect of ·the amendment, we find nothing therein that indicates a legislative intention to postpone its effect in so far as the continuing liability after transfer is concerned. If that liability is to continue, it must be for reasons not found in the wording of the amendment.

In Corrington v. Crosby, 54 ND 614, 210 NW 342, 48 ALR 660, this court determined that the superadded liability while imposed by statute is an obligation contractual in nature. We also held that it was not an asset of a corporation as a going concern but a liability created solely for the benefit of the creditors.

The Supreme Court of Minnesota has construed a statute similar to ours continuing the liability of a transferor of bank stock for one year after entry of the transfer to be only for the benefit of creditors who were such at the time of transfer. In Bank of Dassel v. March, 183 Minn 127, 235 NW 914, it is held that: "A bona fide transferor of stock in a bank is not liable for the debts of the bank incurred after the transfer nor for debts existing at the time of the transfer and paid before the insolvency of the bank and its taking over for liquidation."

This case is cited to illustrate the reasoning applicable to a determination of the effect of the 1937 amendment on the rights of creditors of the bank as against a transferor. ·The reason for determining that the liability of the transferor is preserved or continued only as to those debts of the bank which were incurred during his ownership of the stock and remain unpaid is that creditors to whom such debts are owed are the only ones who extended credit to the bank in reliance upon the transferor's liability. See also Bombal v. People's State Bank, 289 Ill App 203, 6 NE(2d) 884; Pace v. Shaw (Tex Civ App) 13 SW (2d) 925, affirmed in (Tex Com App) 29 SW(2d) 965; Pool v. Chapman (Tex Com App) 283 SW 762.

In the case before us, we have the amendment above quoted which on July 1, 1937, abolished the continuance of the liability of the stockholders for one year after transfer. It may well be argued that the amendment does not apply to creditors whose debts existed at the time the amendment became effective and that as to such debts the liability

of a transferor of stock continues for one year as prescribed by the old law. On the other hand it cannot be successfully contended that creditors of the bank, to whom the bank became indebted after amendment became effective, relied in any way upon the right to hold stockholders liable after a bona fide transfer of their stock. These creditors must be presumed to have permitted their indebtedness to be created with knowledge that the continuing liability after transfer had been abolished.

The foregoing conclusion is supported by the reasoning of the Supreme Courts of South Dakota and Nebraska in cases involving the converse of the proposition that we are here considering. In Federal Deposit Ins. Corp. v. Ensteness, 68 SD 467, 4 NW(2d) 209, it was held that a constitutional amendment exempting certain banks from stockholders double liability did not relieve a stockholder of liability as against a creditor whose rights were vested prior to the amendment. In Department of Banking v. Foe, 136 Neb 422, 286 NW 264, 123 ALR 894, paragraph 2 of the syllabus by the court it is said: "The repeal of a constitutional provision, imposing double liability on corporate stockholders of an insolvent bank, not containing a saving clause, does not affect the obligation of such stockholders as to liabilities incurred by the banking institution prior to such repeal."

The Farmers and Merchants Bank of Elgin continued to operate as a banking institution until taken over by the State Examiner on October 30, 1937. It was adjudicated insolvent on November 30, 1937. The statutory provision continuing the liability of a stockholder was for the benefit of creditors of the bank whose debts were incurred while the provision was in effect. Creditors who became such after the provision was stricken from the law cannot claim rights thereunder or enforce liabilities based on the provision. In this action the receiver represents the creditors with rights no greater than theirs. The record is silent as to what if any debts incurred prior to July 1, 1937, remain unpaid. See Veigel v. Harris, 166 Minn 438, 208 NW 129. Since the only possible liability of the defendant would be for debts that existed prior to the time the amendment became effective and none are alleged or shown, the judgment against him must be reversed.

CHRISTIANSON, BURR, BURKE, and NUESSLE, JJ., concur.