CLAUS DANKER ET AL., APPELLEES, V. PETER B. JACOBS ET AL., APPELLANTS.

FILED JUNE 22, 1907. No. 14,876.

1. **Attachment: INTERVENTION.** A third party claiming an interest in or lien on property upon which an attachment has been levied cannot intervene in the attachment suit to question the grounds for the issuance of the writ.

2. ———: CLAIM NOT DUE: SURETY. Where the payee of a promissory note before the maturity thereof indorses the same to a

person who is surety thereon, such surety takes all the rights of such payee; and, in cases where the payee could have obtained an attachment under the provisions of section 237 of the code authorizing such process upon claims before due, the surety is entitled to the same remedy.

3. Evidence examined, and found to support decision of trial court refusing to dissolve the attachment.

APPEAL from the district court for Sarpy county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Byron G. Burbank, Charles Battelle* and *J. J. Hess,* for appellants.

*W. H. Thompson, contra.*

CALKINS, C.

On March 8, 1905, the defendant Jacobs made to a bank in Iowa his promissory note for $1,300, due in one year, which the plaintiffs Danker signed as surety. In October following the plaintiffs paid the principal of the note and interest earned up to that date to the bank, which thereupon indorsed and delivered the note to the plaintiffs. They, in December, 1905, began this action, procuring an order from the county judge of Sarpy county allowing an attachment under the provisions of section 237 of the code, permitting that remedy to creditors on claims before due in certain cases, and caused the same to be levied upon lands standing in the name of Jacobs in Sarpy county. Jacobs had purchased the land of one Rihner, who before this date had brought a suit in equity to cancel the conveyance on the ground that the same was obtained from him by fraud. This suit was pending at the date of the attachment, and was afterwards determined in favor of the plaintiff, in a decree which provided that, if the attachment in this suit should be sustained, it should in such case be deemed a lien upon said land. Rihner intervened in this action and moved to discharge the attachment, but his petition of intervention was denied

and his motion stricken from the records. Jacobs appeared in the action by Mr. Burbank, his attorney, and moved to discharge the attachment, which motion, after a hearing upon the law and facts, was denied. The plaintiffs questioned the authority of Mr. Burbank to appear for Mr. Jacobs, and an order was made requiring him to show his authority for said appearance, which upon a hearing was discharged. The defendant Jacobs appeals from the order denying the motion to discharge the attachment; the intervener Rihner appeals from the order striking his petition of intervention and motion to dissolve the attachment from the files, and the plaintiffs prosecute a cross-appeal from the rule discharging the order for Mr. Burbank to show his authority to appear for the defendant Jacobs.

1. It is settled that a claim of ownership in, or a lien upon, the property attached gives the claimant no right to intervene and move for a dissolution of the attachment. *Kimbro v. Clark,* 17 Neb. 403; *Meyer v. Keefer,* 58 Neb. 220. The intervener cites the case of *Deere, Wells & Co. v. Eagle Mfg. Co.,* 49 Neb. 385. The doctrine of that case is expressly limited to cases where writs of attachment have been levied in different actions on the same property, and the plaintiff in the later case seeks to intervene in the earlier case on a proper showing, not to defend the principal action nor to move to discharge the attachment, but to have the relative priority of the levies adjudicated. He also argues that the act of 1887 (sec. 50a of the code) gives him the right, as a party claiming an interest in the matter in litigation, to intervene. This depends upon the proper definition of the matter in litigation. We understand the matter in litigation in this case to be, not the real estate attached, nor the ownership thereof, but the debt owing by Jacobs to the plaintiffs, and the existence of the facts alleged in their petition for attachment. The interest that entitles a person to intervene must be of such a nature that he will gain or lose by the direct legal operation of the judgment. *Smith v. Gale,* 144 U. S. 509,

A judgment for the plaintiffs in this case, and the sustaining of the attachment herein, in no way prevents the intervener from disputing Jacobs' ownership of the property attached in any other proceeding. Therefore his rights are not affected by the direct legal operation of the judgment, and it follows that the judgment of the district court was correct in this respect.

2. The defendant contends that the action cannot be maintained for the reason that the plaintiffs cannot be said to be creditors of the defendant, and in support of this contention invokes the doctrine that, where one of two joint promissors, who is liable directly upon the note for its whole amount, buys such note, the note is necessarily extinguished, and the original contract at an end. This was the rule of the English law before the statute of 19 and 20 Victoria, quoted by the defendant, which provides that, in all cases where the surety pays the debt of another, he shall be entitled to assignment, and to stand in the place of the creditor in any action or other proceeding at law or in equity. But the general American doctrine is more liberal in favor of sureties than the English law before the enactment of that statute. The courts have, in a majority of the American states, accomplished the same result by judicial decisions, which has been reached in England by act of parliament. In the case of *Nelson v. Webster*, 72 Neb. 332, in an opinion very fully discussing this question, our own court has adopted the rule of the civil law that the surety is entitled, where he pays the whole debt, not only to the collateral securities taken by the creditor, but he is also entitled to be substituted as to the very debt itself to the creditor by way of cession or assignment. If the bank had not parted with the ownership of the note, it would have been entitled to an attachment before the same became due, in the cases prescribed in section 237 of the code; and it follows under the doctrine above announced that the surety paying the debt before due and taking an indorsement of the note was entitled to the same remedy.

3. The defendant's counsel insists that there is not sufficient evidence to support the charge that the defendant sold, conveyed and otherwise disposed of his property with intent to defraud his creditors, and to hinder and delay them in the collection of their debts. Before the commencement of this suit the defendant had been indicted and had absconded. He left property standing in his name or hitherto claimed by him, the farm attached herein, personal property thereon, and, it is alleged, a farm in Lincoln county, barley grown upon the Sarpy county farm, and a valuable horse, said to have cost $500 and to have been sold for $170. There was $500 received from a settlement of the litigation affecting the Sarpy county farm, which was paid to defendant's attorney and by him retained as fees. $900 surplus was realized by defendant's attorney from the sale of the personal property on the farm, one-half of which was retained by him as fees, and the remainder paid to Mrs. Buchanan, wife of the defendant's business associate, who also claimed and sold the horse in question. The barley was shipped and sold by Mr. Buchanan, while the evidence fails to show just what became of the proceeds of the Lincoln farm. All the property owned or claimed by Jacobs before his departure was soon thereafter converted into money, and the net proceeds thereof, after satisfying attorney's fees seems to have gone to the Buchanans. It is claimed by the defendant that some of this property belonged to the Northwestern Trust Company, a corporation of which Jacobs was president and Buchanan secretary. There is no evidence of the facts showing such ownership, though it is testified to as a conclusion of law; neither is there any evidence as to how the Buchanans became the owners of the horse and the barley. We do not propose to discuss the testimony at large, but, for an illustration, take the single question of the disposal of the horse. The proof offered on the part of the plaintiff is the statement of Jacobs that he owned this horse and paid $500 for it. This is met by the testimony of the defendant's attorney that

shortly after Jacobs left the state the horse was in the possession of Mrs. Buchanan, who "admitted the ownership of the horse as her property for and on behalf of her husband." The disposal of this item of property being challenged by the plaintiffs, it was incumbent upon the defendant to account for the same, and there is a total lack of any testimony showing how the title passed to Mrs. Buchanan or her husband, if it ever did so pass.

In the defendant's brief it is admitted that Jacobs' absconding might be evidence of his fraudulent disposition of the property, if it had not been for his indictment; but it is argued that his motive in leaving the state was not to defraud a creditor, but to avoid criminal process. The intent to escape the criminal prosecution and the intent to defraud creditors are not inconsistent. On the contrary, the former is likely in many cases to be the cause of the latter. On the whole, we are satisfied that there was sufficient evidence to support the finding of the trial judge, and that it should not therefore be disturbed.

Since the attachment must be sustained, it becomes unnecessary to consider the errors assigned by the plaintiffs upon their cross-appeal.

We therefore recommend that the judgment of the district court be affirmed.

JACKSON and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.