STATE, EX REL. GUY A. CROOK, APPELLANT, V. RICHARD A. COUPE ET AL., APPELLEES.

FILED MAY 13, 1912.   No. 17,485.

1. Statutes: AMENDMENT: CONSTRUCTION. An act of the legislature, the sole purpose of which is stated in the title to be to amend a specified section of a complete and comprehensive act, makes the section so amended a part of the original act, which must, if possible, be so construed as to give it a meaning consistent with the whole act.

2. ———: CONSTRUCTION. Two sections of the same act of the legislature will not be considered so inconsistent as to be nugatory if by any possible construction they can be made to agree.

3. Counties and County Officers: POWERS OF COUNTY BOARD: BRIDGES. The act of 1905 (laws 1905, ch. 126) as amended by chapter 111, laws 1911, gives county boards power to let contracts for bridges,

culverts and road improvements to the lowest bidder; to reject
any and all bids; and, if found to be in the interest of the public,
to purchase materials and employ labor and construct bridges and
culverts.

APPEAL from the district court for Richardson county:
JOHN B. RAPER, JUDGE. *Affirmed.*

*Reavis & Reavis,* for appellant.

*Clarence Gillespie, Amos E. Gantt* and *Edwin Falloon,*
contra.

SEDGWICK, J.

The board of supervisors of Richardson county pub-
lished a notice to bridge contractors, advertising for bids
"for the furnishing of all materials and labor necessary
for the construction and completion of all steel bridges
that may be ordered during the ensuing year." Pursuant
to this notice seven bids were filed with the county clerk,
and upon consideration of these bids the board entered
an order that "the board of supervisors  *  *  *  have
concluded to reject all bids and pursue the course fol-
lowed by the county in the past few years in building its
own bridges." This relator brought this action in the
district court for Richardson county to compel the board
of supervisors to readvertise for bids. Upon trial the
district court found generally in favor of the defendants
and dismissed the case, and the relator has appealed.

The question presented is whether the county board is
authorized to construct bridges for the county, the cost of
which exceed the sum of $500. The whole matter being
within the jurisdiction of the legislature, the question de-
pends upon the construction of the statute. In 1905 an act
was passed by the legislature relating to bridges, contracts
and improvements on roads. Laws 1905, ch. 126. The act
is quite comprehensive, containing 19 sections besides
the repealing clause. It repeals four sections of the road
law of 1879 (laws 1879, p. 120) as they then appeared in

the Compiled Statutes. The last legislature passed an act entitled: "An act to amend section 6126 of Cobbey's Annotated Statutes of the state of Nebraska for the year 1909, and to repeal said original section and to declare an emergency." Laws 1911, ch. 111. The section so amended was the first section of the act of 1905, and as amended is as follows: "The county board of each county has the power to repair or erect all bridges and approaches thereto and build all culverts and make improvements on roads the cost and expense of which shall in no instance exceed five hundred dollars. And all contracts for the erection or reparation on bridges and approaches thereto, for the building of culverts and improvements on roads and for furnishing materials in connection with the same the cost and expense of which shall exceed five hundred dollars shall be let by the county commissioners or county board of supervisors to the lowest and best bidder. The records of each county board pertaining to such improvements shall be kept in a separate book provided for that purpose. Said book shall be kept indexed up to date. A complete record of each bridge repaired or constructed by the county shall be kept in said book as follows: First. The date of construction or repair must be given. Second. The bridge repaired or constructed must be located by giving its distance and direction from the nearest section corner, stating which section corner, naming the section and the township in which the section is located. There must be recorded an itemized statement of all material used, giving the amount, kind, quality and price of material and date furnished, and said statement must be sworn to by the person or persons furnishing the same, and an itemized statement of all work and labor performed, giving the number of days, the dates and the price per day, and said statement must be sworn to by the person or persons performing said work. Said original statements for material and labor shall be filed away by the county clerk, and it shall be designated in said record where they are filed; provided that said record

33

shall be kept by the county engineer in counties having such an officer. An itemized statement of all material used in construction of approaches and culverts and of all material used in improvements on roads, and all labor performed must be signed and sworn to by the party or parties furnishing the material and the party or parties performing the labor, and the record of said improvements shall be kept in the same manner as is herein provided in repairing or construction of bridges by the county. A similar record of all bridges or improvements made by contract shall be kept in said book. All bids for the letting of contracts must be deposited with the county clerk and opened by him in the presence of the board of supervisors and filed in the clerk's office." Section 10 of the act of 1905 is: "That the county commissioners or supervisors shall require bidders to bid upon plans and specifications prepared by a competent engineer and adopted by the county board; provided that in any county having a county engineer said plans and specifications shall be prepared by said county engineer, and said board may accept the lowest and best bid and award the contract accordingly or reject any and all bids if the prices submitted are exorbitant or too high or reject all bids submitted for such work. Upon rejection of any bid or bids by said board, it shall have power and authority to purchase the necessary bridge material and employ the necessary labor to construct and repair bridges to be built by the county within one year; the purpose being that said county board shall be vested with power and authority to purchase the necessary material and employ the necessary labor to construct and repair the bridges of the county within one year."

From the title of the amendatory act of 1911 it appears that the legislature intended to amend only the first section of the former act; there is no indication that it was intended to change any other part of the act. It follows that the whole act, as it now is, must be construed together, and the will of the legislature determined there-

from.  The first section, if considered by itself, would necessarily be construed to mean that, when the cost of the proposed bridge or improvement would be more than $500, the contract must be let to the lowest bidder and the bridge could not be built by the county authorities.  But section 10 provides: "Said county board shall be vested with power and authority to purchase the necessary material and employ the necessary labor to construct and repair the bridges of the county within one year."

The two sections are apparently inconsistent, and it is difficult to tell what is meant by such legislation; but, when cases are submitted and insisted upon, they must be decided.  If it is impossible to ascertain with certainty what the intention of the legislature was, we must consider the purpose and spirit or policy of the act and prior legislation and ascertain the probable intention.  Two sections of the same act will not be considered inconsistent, and therefore nugatory, if by any possible construction they can be made to agree.  Section 19 of the act provides that under certain circumstances the county board "may proceed to enter into a contract, * * * or may buy materials and hire labor." This may indicate that, when the act speaks of a "contract," it refers to an entire contract for a specified improvement, and not to contracts for the purchase of material or for performing the labor when the work is done by the county itself.  If by the second clause of the first section, then, the legislature intended that, when the board did let contracts upon bidding, it must let them to the lowest and best bidder, and if that was the whole purpose of this clause, the two sections are not inconsistent.  It must be considered that this is a somewhat strained and unnatural construction of the clause, but it is better than to charge the legislature with inconsistency, and it is not impossible that such was the meaning of the legislature.

The language of the tenth section, "said board may accept the lowest and best bid and award the contract accordingly or reject any and all bids if the prices sub-

mitted are exorbitant or too high or reject all bids submitted for such work," is very much discussed in the brief for the relator. It is said that the words, "any and all bids if the prices submitted are exorbitant or too high," are special and particular, and are intended by the legislature to define when the board may reject bids, so that the subsequent clause, "or reject all bids submitted for such work," can be given no meaning or effect. It is argued that it follows that, unless and until the board finds that the bids are exorbitant or too high, they cannot reject them, and the further conclusion seems to be derived from this reasoning that, if the bids can only be rejected because they are exorbitant or too high, the board must in such case readvertise for bids, and cannot purchase the material and employ the labor to construct bridges. It would be better to disregard entirely the words, "or reject all bids submitted for such work," than to resort to such a construction by inference. As before stated, the act of 1905 repeals four sections of the act of 1879, and the act of 1879 repealed chapter 47 of the Revised Statutes of 1866. Section 16, ch. 47, Rev. St. 1866, authorized the county authorities to "let contracts to the lowest competent bidder, for the improvement of" roads, and the following section indicates that the repairing of bridges and culverts was included in the act. The act of 1879 provided that all contracts should be let "to the lowest competent bidder," and it was the act of 1905 that first introduced the power to purchase material and employ labor by the county authorities themselves. This perhaps accounts for the emphasis given by the legislature to this power of the county board to purchase materials and employ labor. The provision to that effect is repeated in the tenth section, first stating the power given to the board, and then emphasizing it by declaring the purpose and intention so to do. We conclude that the proper construction of the whole act as it now exists, giving as far as possible some meaning to every part thereof, is that the county board may build bridges by entering

into contract therefor, and that when they do so they must comply with the provisions of the statute in that regard and must let the contract to the lowest and best bidder; and that they may reject any and all bids, and, if they consider it in the best interests of the county, may purchase the material and employ the labor for the construction of the bridges.

This was the holding of the trial court, and the judgment is

AFFIRMED.