STATE, EX REL. C. A. RANDALL, MEMBER OF NEBRASKA STATE RAILWAY COMMISSION, RELATOR, v. GEORGE E. HALL, TREASURER OF THE STATE OF NEBRASKA, RESPONDENT.

FILED JULY 20, 1933. No. 28902.

*Paul F. Good, Attorney General,* and *Daniel Stubbs,* for relator.

*Ralph P. Wilson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and SHEPHERD, District Judge.

PER CURIAM.

Writ of mandamus issued in an original action to compel state treasurer to countersign and pay warrant for quarterly salary of a member of the Nebraska state railway commission.

C. A. Randall, a member of the Nebraska state railway commission, filed original application in this court for a writ of mandamus to compel the state treasurer to countersign and pay his warrant for his salary for the quarter ending June 30, 1933, alleging that he was duly elected a member of the Nebraska state railway commission for a term of six years, beginning on January 5, 1929, and on June 13, 1933, the state auditor issued a salary warrant in due form, for the sum of $1,250, to the relator; that the state treasurer failed and refused to countersign said warrant and to pay said warrant out of the public money in the state treasury, there being at all times sufficient money in the treasury to pay said warrant and salary claim. The relator prayed for an order of the court that a writ of mandamus issue to compel the state treasurer to countersign and pay said warrant.

To these allegations the state treasurer, after admitting the facts alleged, set out that Senate File No. 52, duly enacted at the legislative session of 1933, with emergency clause attached, was duly approved by the governor May 2, 1933, and thereupon became effective, and reduced the salary of the relator from $5,000 a year to

$3,400 a year, and that said quarterly salary warrant should be for $850 instead of $1,250, and prayed that the relator be denied a writ of mandamus.

■ The cause came on to be heard, first, on a motion of Barton Green, presented by his attorney, for leave to file a petition of intervention, a copy of which was not attached to his motion. He argued that the taxpayers would not be represented unless he was allowed to intervene.

The attorney general opposed granting leave as requested, asking why, if Mr. Green had a *right* to intervene, did he need to ask *leave* of court? The attorney general contends that the state treasurer not only represents himself in this action, but all taxpayers. He also insists that intervention is not possible in a mandamus proceeding, for the statute limits the pleadings that can be filed in mandamus. Comp. St. 1929, secs. 20-2164, 20-2226.

■ It was also contended by the attorney general that section 20-328, Comp. St. 1929, requires one to have an interest in the matter in litigation to be allowed to intervene, and urged that a decree in this case will not affect Barton Green, except in a remote manner.

In *Buffalo County v. Kearney County,* 83 Neb. 550, certain taxpayers desired to intervene, and this court held:

" 'It is a universal rule of law that no one has any right to intervene in any action unless he has some right to protect, which is not being protected.' Kearney county through its legally constituted authorities was vigorously and ably doing everything that could be done to protect any rights which the defendant might have, and we see no reason why these taxpayers should have incumbered the record by intervention."

In *Danker v. Jacobs,* 79 Neb. 435, it was held, in interpreting the intervention statute: "The interest that entitles a person to intervene must be of such a nature that he will gain or lose by the direct legal operation of the judgment. *Smith v. Gale,* 144 U. S. 509."

"An intervener must plead some direct legal interest in the subject-matter of the litigation; a mere denial of plaintiff's right is insufficient to give him a standing in court." *Moline, Milburn & Stoddard Co. v. Hamilton,* 56 Neb. 132; *Parker v. City of Grand Island,* 115 Neb. 892. See *Kansas & C. P. R. Co. v. Fitzgerald,* 33 Neb. 137; *Latham v. Chicago, B. & Q. R. Co.,* 100 Neb. 173; *Brown v. Brink,* 57 Neb. 606; *La Mesa Lemon Grove & Spring Valley Irrigation District v. Halley,* 195 Cal. 739; *Commercial Nat. Bank v. Robinson,* 66 Okla. 235.

After a recess the court denied leave to intervene, because the proposed intervener has no interest in the subject-matter different from any other taxpayer, or from taxpayers generally, and, second, because there is no charge that the state treasurer is not defending this action in good faith, and, third, the statute specifically allows just two pleadings in mandamus actions of this kind, which implies that others are not proper. However, the court made an order allowing the applicant, Green, 30 minutes to argue the merits of the case as *amicus curiæ,* of which permission he did not avail himself.

■ ■ The answer having admitted the facts set out in the petition, relator filed a motion asking the court to enter judgment on the pleadings. Each of the parties thereupon joined in a motion asking the court to advance the cause for immediate hearing, which was granted, for the reason that the cause was of serious urgency. Said cause and the motion for judgment on the pleadings were thereupon argued to the court at length.

This action must be determined by a consideration of the provisions of our Constitution. Section 3, art. XVII of the Constitution provides, so far as relates to this action: "Until otherwise provided by law the following salaries shall be paid: * * * members of the state railway commission, each $5,000 per annum."

As Senate File No. 52 attempted to diminish the salary provided in the Constitution for members of the state railway commission, we are faced with a provision, which

has long been in our Constitution, to the effect that the compensation of any public officer shall not be increased or diminished during his term of office. This provision was amended and broadened by the constitutional convention of 1920, and the full paragraph is found in section 19, art. III, which now reads as follows: "The legislature shall never grant any extra compensation 'to any public officer, agent, or servant after the services have been rendered nor to any contractor after the contract has been entered into nor shall the compensation of any public officer, including any officer whose compensation is fixed by the legislature subsequent to the adoption hereof be increased or diminished during his term of office."

These sections of our Constitution together with all other parts thereof, were first passed by the constitutional convention of 1920, and then submitted to the electors of our state at a special election, held September 21, 1920, and legally adopted, and now stand as the Constitution, or foundation law of our state, and are as binding upon all sessions of our legislature as upon the governor of our state and all its courts.

The defendant's counsel, in his brief and also in oral argument, calls to our attention that it has been held that it is not the province of the court to alter by construction an act of the legislature which is free from ambiguity, and clear and explicit in its terms, upon the theory that the legislature made a mistake and did not intend to do that which its language clearly imports. He insists that it is an old principle that, in construing an act of the legislature, all reasonable doubt must be resolved in favor of its constitutionality. *State v. Standard Oil Co.,* 61 Neb. 28; *State v. Heupel,* 114 Neb. 797.

It is elementary that it is not within the province of the courts to annul a legislative act unless its provisions clearly contravene a provision of the Constitution. *Abie State Bank v. Weaver,* 119 Neb. 153.

The defendant's attorney also calls our attention to

the fact that, in the absence of any constitutional prohibition, the legislature may change the amount of compensation of any officer, and the same will apply to officers then in office, as well as to those to be thereafter elected, citing the case of *County of Douglas v. Timme,* 32 Neb. 272, but it is just as clearly stated in the second syllabus of that same case that, where an office is created by the Constitution, the compensation of the officer can neither be increased nor diminished during his term of office.

Respondent refers to section 3, art. XVII of our Constitution, fixing the salaries "until otherwise provided by law," and says this is an express grant of power to the legislature to fix the salaries. This is a strained construction of the law, for the language gives the legislature the power, which otherwise it would not have, to change the salaries of such officers, but such change must not be made in a manner to violate other provisions of the Constitution relating thereto.

Statutes *in pari materia* should be construed together, so as to harmonize and give effect to their various provisions. Therefore, for the sake of clarifying the meaning of the two sections of the Constitution controlling in this case, let us combine them somewhat freely, so that we may construe their provisions together. The two sections would then read somewhat as follows:

"Until otherwise provided by law the following salaries shall be paid: * * * members of the state railway commission, each $5,000 per annum. The legislature shall never grant any extra compensation to any public officer * * * after the services have been rendered * * * nor shall the compensation of any public officer * * * be increased or diminished during his term of office, including any officer whose compensation is fixed by the legislature subsequent to the adoption hereof."

In our opinion, this composite rendering of these sections does away with any differences, and with the argument that the legislature may make any change it desires in the salaries of constitutional officers during their term of office.

Constitutional provisions are repugnant to each other only when they cannot be enforced without substantial conflict. Differences must, if possible, be reconciled.

■ The purpose of section 19, art. III of the Constitution, was to establish and maintain the independence of the three branches of the government.

Our system of government distributes the powers between three coordinate departments, the legislative, the executive, and the judicial. Each of these three independent departments derives its power directly from the people, and is responsible to them.

Alexander Hamilton, in the Federalist, No. 78, said: "The executive not only dispenses the honors, but holds the sword of the community: The legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated: The judiciary, on the contrary, has no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society; and can take no active resolution whatever. It may truly be said to have neither force nor will, but merely judgment."

It has been said that the legislative department enacts the laws by which both of the other departments are controlled and bound. The executive has a qualified veto power upon legislative action. Under our plan of government, while the three departments are separate, yet neither can overlook the authority of another department, for all three departments are mutually dependent, which fact guarantees that governmental machinery will run smoothly. The legislature is in many ways the stronger of the three departments, for it has almost unlimited authority to deal with all subjects, being restrained only by the Constitution of our state. The purpose of the Constitution is to prescribe the permanent framework of our system of government and to assign to the three departments their respective powers and duties, and to establish certain fixed principles upon which our government is to be conducted. The people of the state, by adopting

a Constitution, have put it beyond the power of the legislature to pass laws in violation thereof. It has been said many times that the Constitution is unlike a statute of the legislature, in that it is not intended to meet existing conditions, and therefore does not deal with details, but sets out general principles. Woodrow Wilson, in his "Constitutional Government in the United States," said that ours was the only constitutional system balanced and controlled by three such independent departments of government.

James Wilson, one of the signers of the Constitution, and a justice of the United States supreme court, in one of his law lectures said that the independence of each department of our government required that its proceedings should be free from the remotest influence, direct or indirect, of either of the other two departments. Mr. Justice Story said that neither of the departments ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers. 1 Story, Constitution (4th ed.) sec. 530.

■ The provision against increasing or decreasing the salary of a public officer during his term of office has found a place in the Constitutions of many of our states, for it has been demonstrated over and over that, unless the power to change salaries of public officers during their term was taken from the legislature, much of the valuable time of that body would be consumed in so doing. The legislature may increase or decrease the salaries of public officers, and it is at perfect liberty to do so at any session, provided it acts within the constitutional limitations. Among the positive limitations in our Constitution is the one that any increase or decrease of a constitutional officer's salary cannot take effect during that term of office. It is the purpose of this provision of our Constitution that such officers, upon assuming public duties, will receive as compensation for such services the amounts fixed at the time the duties are commenced, and that they will clearly understand that such compensation can-

not be increased during their term of office, nor may it be decreased without conflicting with the clear intent and meaning of the constitutional provision which we are considering.

■ It has been held that the constitutional provision that the compensation of a public officer shall not be increased or diminished during his term of office is explicit and unambiguous. Support for the discussion of the law found herein will be found in these cases: *County of Greenlee v. Laine,* 20 Ariz. 296; *O'Donoghue v. United States,* 289 U. S. 516, *Evans v. Gore,* 253 U. S. 245, 64 L. Ed. 887; *Miles v. Graham,* 268 U. S. 501, 69 L. Ed. 1067; *Elmen v. State Board of Equalization and Assessment,* 120 Neb. 141; *Morrill County v. Bliss, ante,* p. 97; *Hooper Telephone Co. v. Nebraska Telephone Co.,* 96 Neb. 245; *State v. Moores,* 61 Neb. 9.

■ As the members of this court reached a unanimous opinion in the case at bar, the judgment was entered and released at once, as has been done before in a few instances.

Senate File No. 52, enacted at the 1933 session of the legislature, is in conflict with section 19, art. III of the state Constitution, in so far as it purports to change the salary of the state railway commissioner during his term of office.

Therefore, the court finds that relator's compensation for his term of office is wholly unaffected by Senate File No. 52, and that the state treasurer should countersign and pay the said warrant in the amount of $1,250. Writ of mandamus to issue as prayed.

WRIT ALLOWED.