DRAINAGE DISTRICT NO. 1 OF LINCOLN COUNTY, APPELLEE, v. KIRKPATRICK-PETTIS COMPANY ET AL., APPELLEES: SUBURBAN IRRIGATION DISTRICT, INTERVENER, APPELLANT.

300 N. W. 582

FILED OCTOBER 31, 1941. No. 31090.

*Hoagland, Carr & Hoagland,* for appellant.

*Beeler, Crosby & Baskins* and *H. E. Crosby, contra.*

Heard before ROSE, EBERLY and YEAGER, JJ., and KROGER and ELLIS, District Judges.

EBERLY, J.

This is a tax lien foreclosure action brought by Drainage District No. 1 of Lincoln county, Nebraska. The transcript filed herein, prepared under direction of appellant, contains the following: (1) The petition of the Drainage District as filed in the district court for Lincoln county, Nebraska, on January 5, 1940, which sets forth four separate causes of action upon separate county treasurer's certificates of tax sales; (2) a petition of intervention and cross-petition of the Suburban Irrigation District filed in this cause on February 3, 1940; (3) a supplemental petition in the first cause of action filed on March 12, 1940; (4) a dismissal of its third and fourth causes of action filed by plaintiff on March 15, 1940; (5) the Suburban Irrigation District's answer to the supplemental petition filed herein by plaintiff, and also its "supplemental cross-petition;" (6) the final decree; (7) notice of appeal; (8) bond for costs for appeal. It thus appears in the terms of the final decree that the issues tendered in the first separate cause of action set forth in plaintiff's original petition as amended by its supplemental petition, and as set out in the second separate cause of action, were the sole subjects of the trial court's consideration. In its first cause of action the plaintiff sought a foreclosure of a county treasurer's tax sale certificate covering the NE¼ of section 28, township 14 north, range 31 west of the 6th P. M. In its second cause of action plaintiff prayed for the foreclosure of a county

treasurer's tax sale certificate covering the SE¼ of section 28, township 14 north, range 31 west of the 6th P. M. In both of these separate causes of action Kirkpatrick-Pettis Company, a Nebraska corporation, having its principal place of business within that state, was the alleged owner in fee of the lands described therein, and Truman A. Wilson and Goldie Wilson, his wife, were alleged to be in possession of the NE¼ of section 28, and all parts of the SE¼ of section 28 "lying north of Union Pacific right of way," and John Doe and Mary Doe, first and real names unknown, were alleged to be in occupation and possession of that part of the SE¼ of such section 28 "lying south of the Union Pacific right of way." It also appears that all defendants defaulted in the district court and no pleadings were filed in their behalf. On June 18, 1940, after hearing by the court "upon the petition and supplemental petition of the plaintiff and upon all pleadings on file," final decree was filed in which the court found in favor of plaintiff on each of its causes of action, and entered its judgment as prayed by Drainage District No. 1, except as to the priority of its lien. The court found generally against the petition of intervention and answer filed in said cause, and found that such petition of intervention of the Suburban Irrigation District should be dismissed at the costs of intervener in both the first and second causes of action. This decree also determined as to each cause of action set forth in plaintiff's petition the amount of general taxes of the state of Nebraska and its "governmental subdivisions," which were adjudged to be a first lien on the premises in each cause of action described. It also determined that the amount of the assessments due the Suburban Irrigation District and due to Drainage District No. 1 were secured by a second lien on the premises to which they relate, and were of equal priority. As to the amount recovered under each cause of action an attorney's fee was fixed and determined. From this decree the Suburban Irrigation District, in its capacity as intervener, appealed, and in the præcipe on appeal it is desig-

nated as the sole appellant. So far as advised by the transcript, no order allowing intervention was ever entered in this cause. In this connection it will be remembered that "The transcript of appeal is the exclusive evidence of the proceedings in the trial court." *Norwegian Plow Co. v. Bollman*, 47 Neb. 186, 66 N. W. 292. See, also, *Hoagland v. Van Etten*, 23 Neb. 462, 36 N. W. 755.

Intervention was unknown at common law and equity, and is a creature of statute. It is ancillary and supplemental to existing litigation and is regarded as collateral or accessory to the principal action. 47 C. J. 94.

"It is an action within an action, and being ancillary in nature, partakes of the character of the subject-matter of the main action, regardless of the character of its own subject-matter." 14 Standard Ency. of Procedure, 288.

In the consideration of this subject it must ever be remembered that "No rule is better settled or more essential to the rights of parties litigant than that every person is entitled to access to courts of justice without interference from persons who have no interest in the matters in litigation." *In re McClellan's Estate*, 27 S. Dak. 109, 129 N. W. 1037.

Under the terms of the Nebraska Statute (Comp. St. 1929, section 20-328) the intervener who has or claims an interest in the matter in litigation may join either plaintiff or defendant, or he may oppose both when his interest requires it, but he cannot without consent of plaintiff substitute himself for the defendant. 47 C. J. 115; *Clapp & Co. v. Phelps & Co.*, 19 La. Ann. 461, 92 Am. Dec. 545; 20 R. C. L. 682, sec. 20.

"A petition or complaint, or other pleading or application, by which a person seeks to intervene must show by proper averments that the petitioner has an interest which entitles him to intervene; and * * * should set forth his (applicant's) interest in traversable form, and a mere denial of plaintiff's right is not sufficient. * * * A petition or application should set forth facts and not mere conclusions. Thus a general averment to the effect that

applicant has an interest in the subject-matter of the litigation is not sufficient; he should allege the facts which show such interest." 47 C. J. 112.

We have heretofore briefly framed an applicable rule in this form: "An intervener must plead some interest in the subject-matter of the litigation; a mere denial of plaintiff's right is insufficient." *Moline, Milburn & Stoddard Co. v. Hamilton,* 56 Neb. 132, 76 N. W. 455. See, also, *Parker v. City of Grand Island,* 115 Neb. 892, 215 N. W. 127; *State v. Hall,* 125 Neb. 236, 249 N. W. 756; *Geis v. Geis,* 125 Neb. 394, 250 N. W. 252; *Cornhusker Electric Co. v. City of Fairbury,* 131 Neb. 888, 270 N. W. 482.

It is proper for the court to refuse to permit an intervener who has come in to defend the action to continue as a party where he has failed to sustain the material allegations of his complaint in intervention. *Marston Co. v. Central Alaska Fisheries Co.,* 201 Cal. 715, 258 Pac. 933.

"In some jurisdictions the view has been taken that, while a person may intervene who has an interest in the controversy, he cannot intervene when he merely claims an interest in the thing which is the subject of the controversy. * * * The rule frequently stated is that the right or interest which will authorize a' third person to intervene must be of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation of the judgment." 47 C. J. 101. See, also, *Latham v. Chicago, B. & Q. R. Co.,* 100 Neb. 173, 158 N. W. 923.

In this jurisdiction we were early committed to the restricted rule that to entitle a party to intervene in an action he must have a direct interest in or lien upon the matter in controversy in the suit. A mere creditor, although he may have an indirect interest in the result of the action, has no right to intervene therein. *Kansas & C. P. R. Co. v. Fitzgerald,* 33 Neb. 137, 49 N. W. 1100; *Deere, Wells & Co. v. Eagle Mfg. Co.,* 49 Neb. 385, 68 N. W. 504; *Latham v. Chicago, B. & Q. R. Co.,* 100 Neb. 173, 158 N. W. 923; *State v. Hall,* 125 Neb. 236, 249 N. W. 756;

*Cornhusker Electric Co. v. City of Fairbury,* 131 Neb. 888, 270 N. W. 482.

In line with the principles announced in the foregoing cases, and as a definite application thereof, we are also committed to the doctrine that "A third party claiming an interest in or lien on property upon which an attachment has been levied cannot intervene in the attachment suit to question the grounds for the issuance of the writ." *Danker v. Jacobs,* 79 Neb. 435, 112 N. W. 579. This principle so announced is, in effect, modified in *Geis v. Geis,* 125 Neb. 394, 250 N. W. 252, only to the extent that "Writs of attachment having been levied in different actions on the same property, the plaintiff in the later case may intervene in the earlier case on proper showing, not to defend the principal action or to move to discharge the attachment, but to have the relative priority of the levies adjudicated." In addition, chapter 100, Laws 1887 (the statutory source of all rights of interveners), by its title restricts statutory intervention by third parties to those "claiming an interest in the event of any suit pending or to be brought." In this connection it will be remembered that any provision in a legislative bill which is not clearly expressed in its title cannot be enacted into law. *Union P. R. Co. v. Sprague,* 69 Neb. 48, 95 N. W. 46; *Haverly v. State,* 63 Neb. 83, 88 N. W. 171.

So, too, the term "event of any suit" must be taken to mean the "legal event" of any suit. *Ward v. Mallinder,* 5 East (Eng.) 489; *Swinglehurst v. Altham,* 3 Term Rep. (Eng.) 138.

"Acts of the legislature must be construed with reference to, and their scope may not be extended beyond, the limitations of their constitutional title." *Geis v. Geis,* 125 Neb. 394, 250 N. W. 252.

This necessary limitation as the scope of "interest" justifying or authorizing intervention is operative irrespective of the rights and claims involved, or the nature of the suit in which the question may arise.

Also, in view of the relation of the parties, the following

principle is invoked: "In many instances, persons not made nominal parties to the action or proceeding are, nevertheless, represented by such parties, and therefore are, in the absence of collusion, bound by the judgment. There is, however, no absolute right to intervene in such cases, and the right to do so may be denied by the court in the exercise of its discretion, and the discretion will usually be so exercised when there is no suggestion of fraud or collusion or that the representative will not act in good faith for the protection of all interests represented by him." 20 R. C. L. 684, sec. 23. See, also, *Fink v. Bay Shore Terminal Co.*, 144 Fed. 837 (above affirmed in *Zell v. Judges of the Circuit Court of the United States,* 203 U. S. 577, 27 S. Ct. 777) ; 47 C. J. 104.

Even if the petitioner be permitted to intervene the rule appears to be that "An intervener must take the suit as he finds it, and is bound by the previous proceedings in the case. Consequently he cannot complain of the form of the action, or of informalities or defects in the proceedings between the original parties." 14 Standard Ency. of Procedure, 330.

It may be conceded that the provisions of our Civil Code do not contemplate intervention by leave of court first obtained. It is ordinarily a matter of right, and not of permission. Nevertheless, the question whether pleadings or pleadings and proof establish that the party seeking to intervene has an actual interest in the subject of the controversy entitling him to participate therein to the extent of the interest possessed by him is a necessary preliminary question for the trial court's decision and is determinable when the action is finally decided. *State v. Holmes,* 60 Neb. 39, 82 N. W. 109; Comp. St. 1929, sec. 20-329.

At the final hearing in this case relative to the intervention sought by the Suburban Irrigation District, the final decree recites, as to the first cause of action, that the trial court "finds generally against the interveners upon the allegations of their petition of intervention and answer as filed in said proceedings, and finds that the petition of

intervention of the Suburban Irrigation District should be dismissed at the costs of said interveners in said first cause of action." As to the second cause of action this final decree recites: "The court further finds generally in favor of the plaintiff and against the interveners on the answer of the interveners herein." Thereupon the final decree dismissed the petition of intervention as to both the first and second causes of action. The scope of the final order appealed from necessarily limits the field of argument and authority proper to be considered in the determination of the correctness thereof.

Bearing in mind the limitation which our public policy as evidenced by our statutes imposes upon the right of intervention, we now address ourselves to a consideration of the specific claims presented by this appeal, prosecuted not from the disposition of the main case, but from the determination of the ancillary, collateral and accessory proceeding presented by the intervener.

As a basis of appellant's proceeding here presented, it claims that the case of *City of McCook v. Johnson*, 135 Neb. 270, 281 N. W. 69, was wrongly decided; that the doctrine of "trusteeship" announced therein is mere dictum; that there are no authorities to sustain it; that therefore the foreclosure proceedings by Drainage District No. 1 in the instant case (there having been no actual payment of money by such district at or prior to the time the certificates of tax sale were received by it) are wholly without authority of law; that section 77-2009, Comp. St. 1929, embraces all existing authority in Nebraska as to purchase of tax liens from county treasurers without payment in money of the tax lien embraced in the certificate of tax sale issued, and by its terms such authority is limited to county boards; that under section 77-2009 it is essential that drainage districts pay the moneys due on certificates of tax sale to become owners thereof and to be subrogated to all rights of the county, state and other legal subdivisions of the state to enforce its taxes under section 77-2041, Comp. St. 1929; that section 77-2010 provides for sale of

taxes and tax liens to city, village, drainage or irrigation districts, but only on payment of moneys represented by tax sale certificates; that section 77-2040 authorizes foreclosure proceedings only where the certificates of tax sale are sold to the county, and that this is not authority for proceedings where there is neither ownership nor specific trusteeship; that section 77-2041 is applicable only where the "money has been paid to the county treasurer," and under this section the plaintiff might foreclose for a certificate of sale issued to itself for its own taxes only as a basis of foreclosure proceedings; that sections 77-2039, 77-2040, and 77-2041, Comp. St. 1929, are the only provisions of our statute authorizing foreclosure of tax liens (thus omitting all consideration of section 77-2053, Comp. St. 1929).

A careful reading of appellant's brief, and due consideration of the cases cited and statutory provisions referred to therein, do not convince us of the logic of its argument, of the proper interpretation of the authorities on which it relies, and of the correctness of its final conclusions on the subject here in dispute.

It is to be noted that the sections here under consideration were all originally enacted as parts of "An Act to provide a system of public revenue," etc., duly adopted in 1903. Laws 1903, ch. 73. It is a comprehensive revenue measure, with 244 sections, fully providing for the levy and collection of public taxes. Section 201 *et seq.* of this enactment (now carried as section 77-2009 *et seq.,* Comp. St. 1929) largely relate to methods of collecting taxes where real estate has been offered for sale at public tax sale but remains unsold for want of bidders. As these several provisions referred to in appellant's brief originate in a single enactment, and though certain of them have been amended, still their proper legal effect is to be determined by the general rule of statutory construction, which is: "In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject-matter to which it applies and the

particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately." 59 C. J. 993.

The principles announced in the following authorities are applicable to the instant case:

"In determining the intention of the legislature, all provisions of the statute bearing upon the point in dispute should be taken into consideration and given due weight." *City of Lincoln v. Janesch,* 63 Neb. 707, 89 N. W. 280. See, also, *State v. City of Lincoln,* 101 Neb. 57, 162 N. W. 138; *Chicago, B. & Q. R. Co. v. School District,* 110 Neb. 459, 194 N. W. 479.

In construing provisions of the revenue law of the state, all parts of it must be construed together. *Courtright v. Dodge County,* 94 Neb. 669, 144 N. W. 241.

"In construing a statute, an imperative rule is that effect, if possible, must be given to every clause and part of the statute." *Mills v. Bundy,* 105 Neb. 470, 181 N. W. 184. See, also, *Thomas v. Rasmussen,* 106 Neb. 442, 447, 184 N. W. 104.

The legislation here involved is not recent. All the provisions of our statutes on which the intervener relies were originally enacted as parts of chapter 73, Laws 1903, which constituted the general revenue law of that year. In the consideration of these sections as they now appear in the Compiled Statutes of this state, they must be read in connection with the context in which found, the paragraphs to which they are related, their historical development, and as constituent parts of one complete enactment, and thus being within the purview of the rules of construction already quoted.

Section 201 of the 1903 act, and unamended, now appears as section 77-2009, Comp. St. 1929, and authorizes the "purchase for the use and benefit, and in the name of the county," of any real estate advertised and offered for sale (for taxes) when the same remains unsold for want of bidders, etc. It will be noted that the powers conferred

are not exclusive, neither does the language thereof, standing alone, authorize directly or by necessary implication such purchase by the county board to be made without paying the moneys involved to the county treasurer.

Section 202 of this act of 1903 expressly provided: "Whenever any real estate subject to sale for taxes shall be within the corporate limits of any city or village, such city or village shall have the same power to purchase said real estate, and in like manner as the county board may purchase as specified in the preceding section. * * * No such sale shall be made to any city or village by the county treasurer when such lands have been previously sold to the county, but in any such case the city or village may purchase the tax certificate held by the county." In its amended form section 202 now appears as section 77-2010, Comp. St. 1929. Since its original enactment such section 202 has been twice amended, but the right and power of the city and village to purchase real estate at tax sales for the use and benefit and in the name of the city or village is still expressly perpetuated as fully and completely as originally conferred. Matters of detail and administration have been added to the original section without in any manner impairing the substantial powers originally conferred. In addition, it will be noted that by amendment there was added to the governmental agencies empowered to purchase in the same manner as cities and villages, "irrigation districts" and "drainage districts."

Section 203, as originally enacted in 1903, has not been substantially amended, and now appears as section 77-2011, Comp. St. 1929. It provides: "Whenever real estate is purchased by a county board, or by the city or village treasurer, the county treasurer shall not be required to account to the state treasurer, or to any person, for the amount of taxes due, until the county board or city or village authorities have sold the certificate or certificates of purchase of such real estate, or until, by redemption or foreclosure proceedings, he shall have received the money thereon."

This is the statutory source of the county treasurer's power to sell at private tax sale to county, city or village without receipt of price, without any discrimination in favor of the county being expressed. When, by amendment later, irrigation districts and drainage districts were added to the governmental agencies enumerated in section 77-2010, it will be noted that by an added proviso identical rights created by section 77-2011 were likewise conferred on irrigation districts and drainage districts, with reference to purchase of tax liens without immediate payment of the moneys involved.

Section 232 of the 1903 act was not amended and now appears as section 77-2040, and authorizes the institution of foreclosure action "Whenever the county board of any county, or the proper authorities of any city or village, or any person, shall have purchased any real estate for delinquent taxes of any kind, or become the owner by assignment of any tax sale certificates or tax deed, such county, city, village or person shall be deemed to be the assignee and owner of all the liens for taxes of the state, county, city, village, school district, town and other municipal subdivisions for which such tract or lot is sold," and as such "owner" is authorized to prosecute the tax foreclosure proceeding.

There is no specific requirement in this section, as contended for by appellant, that limits the city or village entitled to take advantage of this provision to one who has "paid money to the county treasurer" for the tax lien sought to be enforced. It must be read in connection with sections 77-2010 and 77-2011 which contemplate that the city "shall purchase such real estate" for taxes without payment of money. Obviously such a purchaser is clearly embraced within the terms of section 77-2040, and indeed such must be the construction adopted if the provision here under consideration be construed as part of the act of 1903 considered as an entirety.

Following section 77-2040 we find section 77-2041 which regulates the proceedings of foreclosure of certificates of

county treasurer's tax sales purchased under sections 77-2009, 77-2010 and 77-2011, and provides for the disposition of the funds realized therefrom. It will be noted in this connection that the proceeds of the foreclosure sale, if made, are payable to the clerk of the district court by the sheriff making the same. The clerk of the district court is required to immediately, upon receipt thereof, pay such proceeds of foreclosure sale to the county treasurer, whose duty it is to distribute the same to the tax creditors as set forth in the certificate of tax sale. Section 77-2046 is the statutory provision that, in the event the proceeds of sale are insufficient to discharge the tax liens unpaid thereon, a *pro rata* payment shall be made and the tract of land forever relieved therefrom. As herein suggested, all of these statutory provisions are to be construed together to determine the legal effect of each. So construed, appellant's contention as to sections 77-2009, 77-2010, 77-2040, 77-2041, as being inapplicable to cities and villages, cannot be accepted. A definite statement of the entire transaction contemplated by the act, which includes the sections last referred to, may be expressed thus: The city of McCook "purchased" its certificate of tax sale as authorized by section 77-2010. It paid no moneys to the county treasurer as contemplated by section 77-2011. It brought an action to foreclose the same as provided by section 77-2040, for which purpose in law it was deemed to be the "owner" thereof as therein provided. It prosecuted its action as such "owner" as directed by section 77-2041. When sale was completed it had no possessory right to the proceeds thereof, but the same were by the sheriff conducting the sale turned over to the clerk of the court, who, after payment of the costs, delivered the same to the county treasurer of the county, who, in turn, distributed them to the tax creditors as shown by his tax list and the decree of foreclosure. If insufficient to satisfy all tax creditors the distribution was to be *pro rata*. Clearly the city of McCook was at all times acting as statutory representative of all tax interests involved. Accepting the definition in

Webster's New International Dictionary (2d ed.) viz., "A person, whether real or juristic, to whom property is legally committed in trust; one entrusted with property for another," as a proper designation of a "trustee," that term was properly descriptive of the plaintiff in that case. At least, it must be admitted that under the governing enactments the city of McCook was expressly authorized by statute to bring the foreclosure proceedings without joining with it the persons for whose benefit it was prosecuted. Comp. St. 1929, sec. 20-304. See, also, *Meeker v. Waldron,* 62 Neb. 689, 87 N. W. 539. Obviously, its rights as trustee ceased when the sheriff became possessed of the avails of the foreclosure sale, not in behalf of the plaintiff in that case, but as a public officer possessing public funds. It necessarily follows that the principles announced in *City of McCook v. Johnson,* 135 Neb. 270, 281 N. W. 69, are correct in all respects and are unconditionally approved. See, also, *Taxpayers' League v. Wightman,* 139 Neb. 212, 296 N. W. 886, and *Darnell v. City of Broken Bow,* 139 Neb. 844, 299 N. W. 274.

With reference to the addition of "drainage districts" to the political organizations entitled to take advantage of the statutory provisions under consideration, it is to be observed that it was accomplished by an amendatory act duly passed and approved. We are committed to the rule: "The section of an act properly amended should be construed precisely as though it had been originally enacted in its amended form." *State v. Hevelone,* 92 Neb. 748, 139 N. W. 636. See, also, *State v. Coupe,* 91 Neb. 463, 136 N. W. 41; *First Trust Co. v. Smith,* 134 Neb. 84, 277 N. W. 762.

In addition, by an act expressly made cumulative and enacted as chapter 228, Laws 1915, approved April 14, 1915, it was expressly provided: "That wherever power is now given by the revenue laws of this state to the County Treasurer of any County in this State to sell real estate, on which the taxes shall not have been paid as provided by law, it shall include the power to sell said real estate

for all the taxes and special assessments now levied or hereafter levied by any county, municipality, drainage district, or other political subdivision of the state, and *all provisions of said revenue law now in force with reference to the collection of taxes shall apply with equal force to all taxes and special assessments levied by said county, municipality, drainage district or other political subdivision of the state.*" (Italics ours.)   The provision just quoted now appears as section 77-2053, Comp. St. 1929.   The language italicized amounts to an incorporation by reference of the laws concerning the collection of taxes, and including all of the provisions hereinbefore referred to and considered, as a part of chapter 228, Laws 1915 (now 77-2053), to the same extent as though fully set out therein. *Richardson v. Kildow,* 116 Neb. 648, 218 N. W. 429; *Sheridan County v. Hand,* 114 Neb. 813, 210 N. W. 273; *State v. Moorhead,* 100 Neb. 298, 159 N. W. 412.

It follows that the proceedings instituted and carried on in the instant case by Drainage District No. 1 were duly authorized by the legislation heretofore considered, and can afford no possible basis for intervention.

The intervener insists that taxes for the maintenance of the irrigation district are general taxes, and a first lien on the property in parity with all other taxes due the county and the state.   The controlling statutory provisions are the following:

"All general taxes due the state and its governmental subdivisions shall be a first lien on the real estate on which levied, and takes priority over all other encumbrances and liens thereon."   Comp. St. 1929, sec. 77-206.

"All special assessments, regularly assessed and levied as provided by law, shall be a lien on the real estate on which assessed, but shall be subject to the general taxes mentioned in the last preceding section."   Comp. St. 1929, sec. 77-207.

*Flansburg v. Shumway,* 117 Neb. 125, 219 N. W. 956, is cited by appellant in support of its contention.   The question presented in that case arises from the following

situation: A mortgage executed November 18, 1916, was recorded December 18, 1916, and secured a note dated January 1, 1917. One of the covenants of the mortgage was, "To pay all taxes, assessments and charges, of every character, levied or charged in Nebraska, which are now, or may hereafter become liens upon said real estate." Taxes levied from 1917 to 1922, inclusive, were not paid. Section 17, ch. 73, Laws 1903, in force at the date of the execution and delivery of the mortgage, as well as when taxes were sold at treasurer's private sale, provided: "All general taxes due * * * irrigation districts * * * shall be a first lien on the real estate on which levied and take priority over all other incumbrances and liens thereon." By the terms of chapter 133, Laws 1921, approved April 26, 1921, section 17, ch. 73, Laws 1903, last above quoted, was repealed and sections 77-206 and 77-207 as now existing were enacted in lieu thereof. On that state of facts this court determined: "Statutory provisions in force at the time of the execution of a mortgage enter into and become part of the contract." Further, "Irrigation district assessments are taxes, within the meaning of section 17, ch. 73, Laws 1903, and section 5825, Comp. St. 1922, making general taxes a first lien on real estate, and take priority over an existing mortgage lien."

It is evident that this case cited, because of the diversity of facts involved, is not conclusive on the question here presented. The priority of the tax lien of the irrigation district must be determined by its inherent nature. Is it a "general tax" within the terms of the applicable statutes and within the limitations of the state Constitution authorizing its existence? The necessity of determining the inherent nature of assessments imposed by irrigation districts was presented to this court in *Erickson v. Nine Mile Irrigation District*, 109 Neb. 189, 190 N. W. 573. We there held: "Assessments made by an irrigation district to pay bonded debts and for the maintenance and operation of its canal or ditch are special assessments, even though made in proportion to valuation, and not by acreage or frontage."

See, also, *Board of Directors of Alfalfa Irrigation District v. Collins,* 46 Neb. 411, 64 N. W. 1086; *Douglas County v. Shannon,* 125 Neb. 783, 252 N. W. 199.

These assessments of the irrigation district, sustainable only under the Constitution as special assessments, are necessarily embraced in section 77-207, above quoted, and, as such, are a second lien and of equal priority with the assessments of Drainage District No. 1, as determined by the district court.

From the entire record it appears that the intervener does not in any manner aver or rely upon collusion or fraud on the part of the parties to the lawsuit in which it seeks to become a party. In effect, it presents questions of law only as the foundation of its claim, and it must be admitted that plaintiff correctly pleads the several items of taxes as shown by the public records, for which recovery is sought, both as to items in which the Suburban Irrigation District is the beneficiary as well as for itself and the other public agencies involved.

It is thought that in the foregoing discussion we have disposed of all questions properly raised by the record which in any manner legally affect the right of the Suburban Irrigation District to intervene in the instant case.

True, the questions as to the necessity of plaintiff including in its proceedings all subsequent assessments and taxes levied or assessed upon the premises, its right to have a statutory attorney fee taxed in its behalf, the effect of the correction of the assessment of the northeast quarter according to the fact by adding to the assessable valuation the value of certain improvements actually a part thereof but by mistake assessed elsewhere, the effect of the refinancing by Drainage District No. 1 of its outstanding bond indebtedness, while deemed to have been properly disposed of by the trial court's decree, are not specifically determined in this opinion, but they are all questions which are for consideration in the main case and form no proper part of this ancillary proceeding. For, if these questions be decided adversely to the contention of plaintiff, the amount

of the proceeds of the judgment accruing to it might be diminished, but the amount of intervener's claim would not be affected.

While these questions seem to have been properly determined by the district court, they are not properly a part of this appeal, and are not at this time for decision or final review by this court. To the extent of their merits, if any merit they possess, they relate solely to plaintiff's case, not to intervener's proceeding. While in no way decisive of the matter, the intervener's pleadings contain no allegation that the proceeds of this property in suit will be insufficient to discharge necessary costs and all liens against it. The controlling principle invoked by the instant situation is: "The decision as to the right to intervene ordinarily does not turn on the question as to the merits of plaintiff's case." 47 C. J. 96. "Where, however, the person who intervenes, or who seeks to intervene, does not bring himself within the terms of the applicable statutes, or within the rules of law defining the right to intervene, intervention is not permissible." 47 C. J. 106.

When the Suburban Irrigation District was properly denied the right to intervene in these proceedings, it must be deemed to be a stranger to the proceedings without power to contest the right of plaintiff to recover or otherwise protect the rights of others. 47 C. J. 107.

In addition, in consideration of the authorities heretofore cited in connection with the record before us, in every step of this proceeding the Suburban Irrigation District has been lawfully represented by a statutory trustee, Drainage District No. 1, whose good faith and honesty in the entire transaction is unquestioned. Nor are there any charges of fraud or collusion against it made or established, and neither is the claim made by any one that such trustee within its statutory sphere will not act in good faith for the protection of all interests represented by it. It is deemed that, under the circumstances involved in this case, the fact of lawful representation would alone require the denial of intervener's application. In view of the entire

record, however, we are in accord with the action of the trial court denying intervention and dismissing the intervener's proceeding seeking that end. Such action of the district court is, therefore,

AFFIRMED.

KROGER, District Judge, concurs in the result.